**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA,

v.

No. 3:21-cr-8 (VAB)

KEISHAWN DONALD
TREVON WRIGHT
ERIC HAYES
TRAVON JONES

**RULING AND ORDER ON PRETRIAL MOTIONS**

Keishawn Donald, Trevon Wright, Eric Hayes, and Travon Jones (collectively, the

"Defendants")[1] have been charged in a multi-count Superseding Indictment with crimes related

to the possession and distribution of narcotics, robberies, and acts of violence, including murders

and assaults. *See* Second Superseding Indictment, ECF No. 412 (Sept. 7, 2023) ("Second

Superseding Indictment").

In advance of trial, the parties have filed various motions regarding the propriety of the

prosecution and resulting indictment; the proper scope of evidence; and procedures for the

upcoming trial. *See* Mot. for Opening Statements, ECF No. 278 (Feb. 4, 2023) ("Gov't Mot. for

Opening Statements"); Mot. to Recall Certain Witnesses, ECF No. 282 (Feb. 10, 2023) ("Gov't

Mot. to Recall Witnesses"); Mot. in Limine Re: Use of Inconsistent Statements of Witnesses

---

[1] Four other individuals, Kyran Dangerfield, Tyrone Moore, Charles Anthony Bonilla, and Harry Batchelor, were
originally charged but have since pled guilty. *See* Plea Agreement, ECF No. 184 (Nov. 15, 2021) (Kyran
Dangerfield); Plea Agreement, ECF No. 239 (July 5, 2022) (Tyrone Moore); Plea Agreement, ECF No. 137 (June
24, 2021) (Charles Anthony Bonilla); Plea Agreement, ECF No. 356 (June 5, 2023) (Harry Batchelor).

before the Grand Jury as Substantive Evidence, ECF No. 295 (Feb. 21, 2023) ("Gov't Mot. Re: Grand Jury Testimony"); Mot. in Limine to Preclude Firearms and Ballistics Comparison Evidence, ECF No. 297 (Feb. 21, 2023) ("Hayes Mot. Re: Firearms and Ballistics Evid."); Mot. in Limine to Preclude Rap Music Lyrics and Videos, ECF No. 298 (Feb. 21, 2023) ("Hayes Mot. Re: Rap Music"); Mot. in Limine to Preclude the Admission of Co-Defendant or Co-Conspirator Post-Arrest Statements, ECF No. 299 (Feb. 21, 2023) ("Hayes Mot. Re: Co-Conspirator Post-Arrest Statements"); Mot. in Limine to Preclude Certain Statements and Acts, ECF No. 300 (Feb. 21, 2023) ("Hayes Mot. Re: Certain Acts and Statements"); Mot. in Limine to Preclude Irrelevant Prejudicial Prior Acts, ECF No. 301 (Feb. 21, 2023) ("Hayes Mot. Re: Prior Acts"); Mot. in Limine to Preclude Law Enforcement Lay Opinion Testimony, ECF No. 302 (Feb. 21, 2023) ("Hayes Mot. Re: Law Enforcement Testimony"); Mot. in Limine to Exclude Lay Witness Opinion Testimony Regarding Second-Hand Observations from Surveillance Camera Videos, ECF No. 303 (Feb. 21, 2023) ("Hayes Mot. Re: Observations from Surveillance Videos"); Mot. in Limine to Exclude Hearsay, ECF No. 304 (Feb. 21, 2023) ("Hayes Mot. Re: Hearsay"); Mot. in Limine to Exclude Indictment, ECF No. 305 (Feb. 21, 2023) ("Hayes Mot. Re: Indictment"); Mot. in Limine to Exclude Defendants' Self-Serving Hearsay Statements, ECF No. 307 (Feb. 21, 2023) ("Gov't Mot. Re: Hearsay Statements"); Mot. in Limine Re: DNA Evidence, ECF No. 309 (Feb. 22, 2023) ("Wright Mot. Re: DNA"); Mot. in Limine Regarding Use of Rap Music Video Evidence at Trial, ECF No. 310 (Feb. 22, 2023) ("Gov't Mot. Re: Rap Music"); Mot. in Limine Re: Prior Acts, ECF No. 311 (Feb. 22, 2023) ("Wright Mot. Re: Prior Acts"); Mot. in Limine Re: Inconclusive DNA Evidence, ECF No. 361 (June 20, 2023) ("Wright Mot. Re: Inconclusive DNA"); Mot. for Bill of Particulars, ECF No. 385 (Aug. 10, 2023) ("Jones Mot. for Bill of Particulars"); Mot. in Limine Regarding 18+ Ratification, ECF No. 386 (Aug. 10, 2023) ("Jones

Mot. Re: 18+ Ratification"); Mot. in Limine Regarding Withdrawn Change of Plea, ECF No.

387 (Aug. 10, 2023) ("Jones Mot. Re: Plea"); Mot. to Join Codefendants' Motions in Limine,

ECF No. 388 (Aug. 10, 2023) ("Jones Mot. to Join MILs"); Mot. Objection to Government's

Motion in Limine Regarding Rap Video Evidence, ECF No. 389 (Aug. 10, 2023) ("Jones

Objection Re: Rap Music"); Mot. to Dismiss, ECF No. 426 (Sept. 13, 2023) ("Donald Mot. to

Dismiss"); Mot. for Protective Order for Delayed Release of Three Witness Names and

Jencks/Giglio Materials, ECT No. 434 (Sept. 14, 2023) ("Gov't Mot. for Protective Order");

Mot. in Limine Re: Gang Expert, ECF No. 442 (Sept. 15, 2023) ("Donald Mot. Re: Gang

Expert"); Mot. for Permission to Utilize Juror Questionnaire, ECF No. 444 (Sept. 15, 2023)

("Donald Mot. Re: Juror Questionnaire"); Mot. for Expanded Voir Dire Which Include

Questions Related to Implicit Bias, ECF No. 445 (Sept. 15, 2023) ("Donald Mot. Re: Voir

Dire"); Mot. to Strike the Special Sentencing Factors from the 2nd Superseding Indictment, ECF

No. 453 (Sept. 21, 2023) ("Wright Mot. to Strike"); Mot. to Strike Special Sentencing Factors

from the Second Superseding Indictment, ECF No. 457 (Sept. 22, 2023) ("Donald Mot. to

Strike"); and Mot. for Exemption from the Exclusion of Certain Witnesses from Trial Pursuant

to Federal Rule of Evidence 615, ECF No. 467 (Sept. 28, 2023) ("Gov't Mot. for Exemption

from Exclusion of Witnesses").

 For the following reasons, the [298], [299], [301], [302], [303], [307], [310], [311], [389],

and [442] motions are **DENIED without prejudice** to renewal at trial.

 The [304], [305], [386], [434], and [444] motions are **DENIED as moot**.

 The [278], [297], [300], [309], [361], [385], [426], [445], [453], and [457] motions are

**DENIED**.

 The [282], [295], [387], [388], and [467] motions are **GRANTED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves an alleged criminal organization called the "East End gang," whose members allegedly engaged in, among other activities, narcotics distribution, robberies, and acts of violence, including murders and assaults, in the East End neighborhood of Bridgeport, Connecticut. *See U.S. v. Donald*, No. 21-CR-8 (VAB), Second Superseding Indictment, ECF No. 412 at 1 (Sept. 7, 2023). These activities resulted in the indictment of eight Defendants, including the Defendants named below. *Id.*

    A. <u>Keishawn Donald</u>

On January 19, 2021, a grand jury returned an indictment charging Mr. Donald with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). *See* Indictment, ECF No. 11.

On February 11, 2021, Mr. Donald appeared for an arraignment before U.S. Magistrate Judge William I. Garfinkel. Min. Entry, ECF No. 33. He pled not guilty and the Court ordered that he be detained. *Id.*; Order of Detention, ECF No. 34.

On May 3, 2021, a grand jury returned a Superseding Indictment charging Mr. Donald with the same single Count but adding additional Overt Acts and Special Sentencing Factors. Sealed Superseding Indictment, ECF No. 52.

On May 26, 2021, Mr. Donald appeared for an arraignment before U.S. Magistrate Judge Thomas O. Farrish. *See* Min. Entry, ECF No. 114. He pled not guilty. *Id.*

On May 13, 2022, Mr. Donald filed a motion to sever his case from his co-defendants', arguing that many of the overt acts listed in the Superseding Indictment occurred when he was incarcerated and that he therefore could not have participated in them. ECF No. 223. Mr. Donald argued that the risk of substantial "spillover prejudice" was too high to justify trying him

together with his co-defendants. Mem. of L. in Support of Mot. to Sever, ECF No. 223-1 at 4 (May 13, 2022). The Court denied this motion on January 10, 2023. Order, ECF No. 269.

On September 7, 2023, a grand jury returned a Second Superseding Indictment charging Mr. Donald with the same Count but adding additional information. ECF No. 412.

On September 13, 2023, Mr. Donald appeared for an arraignment before Judge Farrish. *See* Min. Entry, ECF No. 428. He pled not guilty. *Id.*

On September 15, 2023, Mr. Donald filed a motion *in limine* seeking to preclude the testimony of Retired Bridgeport Police Department Captain Brian Fitzgerald as a "gang expert." Donald Mot. Re: Gang Expert. He also filed a motion for expanded voir dire, seeking to include questions regarding implicit bias, and submitted a proposed juror questionnaire. Donald Mot. Re: Voir Dire; Donald Mot. Re: Juror Questionnaire.

On September 22, 2023, Mr. Donald moved to strike the Special Sentencing Factors from the Second Superseding Indictment. Donald Mot. to Strike.

On October 18, 2023, Mr. Donald filed a supplemental memorandum regarding the proposed expert testimony of Captain Brian Fitzgerald, arguing that because of his participation in Mr. Donald's seizure and arrest he may attempt to proffer both lay and expert testimony. *See* Min. Entry, ECF No. 482.

## B.  Trevon Wright

On January 19, 2021, a grand jury returned an indictment charging Mr. Wright with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). *See* Indictment, ECF No. 11.

On January 21, 2021, Mr. Wright appeared for an arraignment before U.S. Magistrate Judge William I. Garfinkel. Min. Entry, ECF No. 19. He pled not guilty, and the Court ordered that he be detained. *Id.*; Order of Detention, ECF No. 22.

On May 3, 2021, a grand jury returned a Superseding Indictment charging Mr. Donald with the same single Count but adding additional Overt Acts and Special Sentencing Factors. Sealed Superseding Indictment, ECF No. 52.

On May 21, 2021, Mr. Wright appeared before Judge Farrish for an arraignment. *See* Min. Entry, ECF No. 110. He pled not guilty. *Id.*

On February 22, 2023, Mr. Wright filed a motion *in limine* regarding the Government's use of certain DNA evidence. Wright Mot. Re: DNA; renewed in Wright Mot. Re: Inconclusive DNA (June 20, 2023). He also filed a motion *in limine* seeking to preclude the Government from introducing any evidence of his irrelevant prior bad acts. Wright Mot. Re: Prior Acts.

On February 23, 2023, Mr. Wright filed a motion proposing a guilty plea to a RICO conspiracy. Wright Mot. Re: Potential Guilty Plea, ECF No. 312. He argued that he should be tried separately in state court for the murder of Myreke Kenion, without the "highly prejudicial and irrelevant 'gang' evidence" presented by this case. *Id.* at 1. Mr. Wright made clear, however, that he would not plead guilty to an "aggravated RICO conspiracy" which included the murder of Myreke Kenion as an overt act. *Id.* at 3.

On September 7, 2023, a grand jury returned a Second Superseding Indictment charging Mr. Wright with the same Count but adding additional information. ECF No. 412.

On September 13, 2023, Mr. Wright appeared for an arraignment before Judge Farrish. *See* Min. Entry, ECF No. 429. He pled not guilty. *Id.*

On September 21, 2023, Mr. Wright filed a motion to strike the special sentencing factors from the Second Superseding Indictment. Wright Mot. to Strike.

C.  Eric Hayes

On January 19, 2021, a grand jury returned an indictment charging Mr. Hayes with

Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). *See* Indictment, ECF No. 11.

On February 3, 2021, Mr. Hayes filed a motion to inspect grand jury records. Hayes Mot. to Inspect, ECF No. 30.

On March 8, 2021, Mr. Hayes appeared for an arraignment before U.S. Magistrate Judge Holly B. Fitzsimmons. Min. Entry, ECF No. 46. He pled not guilty. *Id.*

On May 3, 2021, a grand jury returned a Superseding Indictment charging Mr. Hayes with the same single Count but adding additional Overt Acts and Special Sentencing Factors. Sealed Superseding Indictment, ECF No. 52.

On May 21, 2021, Mr. Wright appeared before Judge Farrish for an arraignment. *See* Min. Entry, ECF No. 108. He pled not guilty. *Id.*

On February 21, 2023, Mr. Hayes filed several motions *in limine*, including: a motion to preclude firearms and ballistics comparison evidence, a motion to preclude rap music videos and lyrics, a motion to preclude the admission of post-arrest statements by co-conspirators or co-defendants, a motion to preclude certain acts and statements by co-conspirators, a motion to preclude evidence of irrelevant prejudicial prior acts, a motion to preclude law enforcement lay opinion testimony, a motion to preclude lay witness opinion testimony regarding surveillance video footage, a motion to preclude hearsay, and a motion to preclude use of the indictment. *See* Hayes Mot. Re: Firearms and Ballistics Evid.; Hayes Mot. Re: Rap Music; Hayes Mot. Re: Co-Conspirator Post-Arrest Statements; Hayes Mot. Re: Certain Acts and Statements; Hayes Mot. Re: Prior Acts; Hayes Mot. Re: Law Enforcement Testimony; Hayes Mot. Re: Observations from Surveillance Videos; Hayes Mot. Re: Hearsay; Hayes Mot. Re: Indictment.

On September 7, 2023, a grand jury returned a Second Superseding Indictment charging Mr. Hayes with the same Count but adding additional information. ECF No. 412.

On September 13, 2023, Mr. Hayes appeared for an arraignment before Magistrate Thomas O. Farrish. *See* Min. Entry, ECF No. 430. He pled not guilty. *Id*.

    D.  <u>Travon Jones</u>

On May 3, 2021, a grand jury returned a Superseding Indictment charging Mr. Jones with Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Sealed Superseding Indictment, ECF No. 52.

On May 12, 2021, Mr. Jones appeared before Judge Farrish for an arraignment. *See* Min. Entry, ECF No. 82. He pled not guilty, *id.*, and Judge Farrish determined that detention was warranted. Order of Detention, ECF No. 84.

On August 29, 2021, Mr. Jones pled guilty to Count One of the Superseding Indictment. Min. Entry, ECF No. 246; Plea Agreement, ECF No. 247.

On March 9, 2023, Mr. Jones filed a motion to withdraw his guilty plea. Mot. to Withdraw Plea of Guilty, ECF No. 322.

On July 21, 2023, the Court granted Mr. Jones's motion to withdraw his guilty plea. Order, ECF No. 374.

On August 10, 2023, Mr. Jones filed several motions: a motion for a bill of particulars, a motion regarding the scope of evidence admissible to prove his ratification of the conspiracy after age 18, a motion to preclude admission of his withdrawn guilty plea, and a motion to join his co-defendants' motions *in limine*. *See* Jones Mot. for Bill of Particulars; Jones Mot. Re: 18+ Ratification; Jones Mot. Re: Plea; Jones Mot. to Join MILs.

On September 7, 2023, a grand jury returned a Second Superseding Indictment charging Mr. Jones with the same Count but adding additional information. ECF No. 412.

On September 13, 2023, Mr. Jones appeared for an arraignment before Judge Farrish. *See* Min. Entry, ECF No. 431. He pled not guilty. *Id.*

### E.  The Government

In addition to responding to the motions noted above, the Government has filed motions *in limine* seeking to use inconsistent statements of witnesses before the grand jury as substantive evidence; to exclude Defendants' "self-serving hearsay statements," and to introduce rap music video evidence. *See* Gov't Mot. Re: Grand Jury Testimony; Gov't Mot. Re: Hearsay Statements; Gov't Mot. Re: Rap Music.

The Government has also filed several motions regarding trial procedures, including a motion for opening statements, a motion to recall certain witnesses, a motion to delay the release of three witness names and *Jencks/Giglio* materials, and a motion to exempt certain witnesses from exclusion from trial under Federal Rule of Evidence 615. *See* Gov't Mot. for Opening Statements; Gov't Mot. to Recall Witnesses; Gov't Mot. for Protective Order; Gov't Mot. for Exemption from Exclusion of Witnesses.

The parties were given an opportunity for argument on the pending motions on October 4, 2023. *See* Min. Entry, ECF No. 469.

On October 16, 2023, following the hearing, the Government filed a notice of supplemental authority, indicating a recent ruling by U.S. District Judge Kari Dooley in *U.S. v. Floy*, No. 3:20-cr-58, ECF No. 990 (Oct. 13, 2023), on the admissibility of rap music video evidence in a similar case. *See* Min. Entry, ECF No. 480.

Jury selection is scheduled to begin in this case on October 30, 2023, with trial to begin immediately thereafter. *See* Order, ECF No. 318 (Mar. 3, 2023).

## I.   STANDARD OF REVIEW

### A.   Motion to Dismiss

Federal Rule of Criminal Procedure 12(b)(1) permits defendants to raise by pretrial

motion "any defense, objection, or request that the court can determine without a trial on the

merits." *See U.S. v. Sampson*, 898 F.3d 270, 278–79 (2d Cir. 2018). "[I]n ruling on a motion to

dismiss, a court views the indictment as a whole and assumes its factual allegations to be true."

*U.S. v. Litvak*, No. 3:13-CR-19 JCH, 2013 WL 5740891, at *2 (D. Conn. Oct. 21, 2013) (citing

*Boyce Motor Lines v. U.S.*, 342 U.S. 337, 343 n.16 (1952)).

"The court must decide every pretrial motion before trial unless it finds good cause to

defer a ruling." Fed. R. Crim. P. 12(d). "[A] federal indictment can be challenged on the ground

that it fails to allege a crime within the terms of the applicable statute," *U.S. v. Aleynikov*, 676

F.3d 71, 75–76 (2d Cir. 2012), and thus may be decided "solely upon issues of law." *U.S. v. Was*,

684 F. Supp. 350, 351 (D. Conn. 1988), aff'd, 869 F.2d 34 (2d Cir. 1989). A court must dismiss

an indictment that fails to state an offense. *See U.S. v. Pirro*, 212 F.3d 86, 92–93 (2d Cir. 2000);

Fed. R. Crim. P. 12(b)(3)(B)(v). However, where "such a defense raises dispositive evidentiary

questions, a district court must defer resolving those questions until trial." *Sampson*, 898 F.3d at

279 (internal quotation marks omitted).

### B.   Motions to Strike

Federal Rule of Criminal Procedure 7(d) provides that: "Upon the defendant's motion,

the court may strike surplusage from the indictment or information." Defendants moving to

strike surplusage must meet an "exacting standard," and courts in this Circuit have routinely held

that such a motion should be granted only where the allegations are inflammatory, prejudicial,

and not relevant to the crime charged. *U.S. v. Pirk*, 1:15-CR-00142 EAW, 2018 WL 1027441, at

*2 (W.D.N.Y. 2018); *U.S. v. Scarpa*, 913 F.2d 993, 1013 (2d Cir. 1990) ("[I]f evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." (alteration in original) (internal quotation marks omitted)). In the context of RICO cases, in particular, courts "have repeatedly refused to strike allegations of organized crime connections that serve to identify the enterprise and the means by which its members and associates conduct various criminal activities." *U.S. v. Wilson*, 498 F. Supp. 2d 364, 379 (E.D.N.Y. 2006) (quoting *Scarpa*, 913 F.2d at 1013 (internal references and quotation marks omitted)).

      C.  <u>Motions in Limine</u>

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. U.S.*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (internal citation omitted).

A court should only exclude evidence on motions *in limine* if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 09-CV-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal citation and quotation marks omitted). The court also retains discretion to reserve judgment on some or all motions *in limine* until trial so that the motions may be placed in the appropriate factual context. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009); *see also, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 286–87 (S.D.N.Y. 1996).

D. Trial Procedures

A district court is given broad discretion in managing a trial. *Clark v. Pennsylvania R.R. Co.*, 328 F.2d 591, 594 (2d Cir. 1964); *E. Mishan & Sons, Inc. v. Homeland Housewares LLC*, 580 Fed. App'x 26, 27 (2d Cir. 2014); *Herring v. New York*, 422 U.S. 853, 862 (1975). The presiding judge must remain impartial, but "as long as the court remains within those bounds the trial court is given 'great leeway' to conduct the trial in the most efficacious manner." *Jones v. Parmley*, 714 Fed. App'x 42, 45 (2d Cir. 2017) (quoting *U.S. v. Filani*, 74 F.3d 378, 386 (2d Cir. 1996)). Such trial management decisions are reviewed for abuse of discretion. *U.S. v. Yakobowicz*, 427 F.3d 144, 150 (2d Cir. 2005).

II.     **DISCUSSION**

A. Threshold Issues

*1. The Juvenile Delinquency Act (JDA)*

The Juvenile Delinquency Act (the "JDA") regulates the exercise of federal jurisdiction over juvenile defendants. 18 U.S.C. §§ 5031 *et seq*. The JDA establishes two certification requirements that serve as prerequisites to the exercise of federal jurisdiction over juveniles in federal courts: (1) a "need certification" by the Attorney General that there is a need for the proceeding to occur in federal, as opposed to state, court, and (2) a "record certification" that requires the delivery of any previous juvenile court records to the federal court. *Id.* at § 5032; *U.S. v. Wong*, 40 F.3d 1347, 1363 (2d Cir. 1994) (explaining that "proper certification confers jurisdiction [over juvenile defendants] upon the district court"). The JDA applies to juveniles who are "alleged to have committed an act of juvenile delinquency," which is defined as "the violation of a law of the United States committed by a person prior to his eighteenth birthday

which would have been a crime if committed by an adult." 18 U.S.C. §§ 5031–32. In the RICO

context, the relevant "act" for purposes of determining jurisdiction under the JDA is the crime

charged in the indictment, meaning the substantive RICO and RICO conspiracy offenses, rather

than the discrete predicate acts underlying those charges. *Wong*, 40 F.3d 1347, 1365–66 (2d Cir.

1994).

i.    The Motion to Dismiss the Indictment

In his motion to dismiss the indictment, Mr. Donald argues that this Court lacks subject

matter jurisdiction over him under the JDA. Donald Mem. in Support of Mot. to Dismiss the

Indictment, ECF No. 426-1 at 1 (Sept. 13, 2023). Mr. Donald argues that at the time of the

charged conduct—specifically, the murder of Eric Heard, a narcotics-related citation, and a

weapons-related arrest—he was a juvenile. *Id.* at 1–2. He further argues that "[t]he Second

Superseding Indictment does not allege anything that would permit this Court to conclude that it

has jurisdiction." *Id.* at 7. Because, in his view, the Government has not established his

continuing participation in the conspiracy and never filed the two certifications required under

the JDA, Mr. Donald concludes that "there lies no jurisdictional basis for the government's

charges," and requests that this Court dismiss the Second Superseding Indictment as to him. *Id.*

at 3, 7.

In response, the Government argues that it did not need to comply with the requirements

of the JDA "because Donald was indicted after he turned eighteen[2] having continued his

---

[2] To the extent that the Government argues that the JDA does not apply because it indicted Mr. Donald after he turned 18, under the circumstances of this case, the Court disagrees. The JDA is not categorically inapplicable to a given defendant unless the defendant is over age 21 at the time of indictment. *See U.S. v. Camez*, 839 F.3d 871, 874 (9th Cir. 2016) ("If the defendant is 21 or older, then the JDA does not apply. . . If the defendant is 18, 19, or 20 at the time of indictment, then we must ask whether the alleged crime occurred 'prior to his eighteenth birthday.'" (quoting 18 U.S.C. § 5031)); *see also U.S. v. Hoo*, 825 F.2d 667, 669–70 (2d Cir. 1987) ("In applying Section 5031, the courts have consistently held that a defendant who is alleged to have committed a crime before his eighteenth birthday may not invoke the protection of the Juvenile Delinquency Act if criminal proceedings begin after the

participation in the conspiracy after turning eighteen." Gov't Opp. to Def.'s Mot. to Dismiss, ECF No. 446 at 1 (Sept. 16, 2023). More specifically, the Government alleges that Mr. Donald was involved in a conspiracy to murder Joshua Gilbert, and that it "put Donald on notice of an overt act he committed in furtherance of the RICO conspiracy after reaching eighteen years of age" by describing this alleged act in its response to Mr. Donald's severance motion and in its Trial Memorandum. *Id.* The Government further argues that, even if it does not prove that Mr. Donald committed any overt acts after age eighteen, it may prove that Mr. Donald ratified the conspiracy so long as it can show his continued participation or lack of affirmative withdrawal. *Id.* at 4–5.

The Court agrees in part.

It is well-established that the JDA does not prevent an adult criminal defendant from being tried as an adult simply because he first became involved in the conspiracy with which he is charged while he was still a minor. *See Wong*, 40 F.3d at 1366; *U.S. v. Geraldo*, 687 Fed. App'x. 101, 108 (2d Cir. 2017); *U.S. v. Cruz*, 805 F.2d 1464, 1477 (11th Cir. 1986). Because conspiracy is a continuing crime, a federal court may assume jurisdiction over a defendant upon a threshold demonstration of post-eighteen conspiracy activity. *Wong*, 40 F.3d at 1366. In a RICO case, an indictment charging a defendant with only a single predicate act as an adult is sufficient to support a conviction for a substantive RICO or RICO conspiracy violation if there is evidence of a pattern of pre-eighteen predicate acts. *Id.* "[O]nce having established that certain acts of the offense occurred after the defendant's eighteenth birthday, the entire case may be tried

---

defendant reaches the age of twenty-one."; *see also In re Martin*, 788 F.2d 696, 697–98 (11th Cir. 1986); *United States v. Araiza-Valdez*, 713 F.2d 430, 432–33 (9th Cir. 1983); *U.S. v. Doe*, 631 F.2d 110, 112–13 (9th Cir. 1980). However, since the Government's main argument concerns Mr. Donald's alleged ratification of the conspiracy after he turned 18, the Court focuses its discussion on that point.

in accordance with the adult rules of procedure and evidence." *Id.* at 1367, quoting *Cruz*, 805 F.2d at 1477.

In this case, the Government points to a range of different evidence that it intends to introduce at trial—including social media posts and other communications, as well as the testimony of cooperating defendants—which it claims will prove Mr. Donald's involvement in the East End gang after he turned eighteen. Gov't Opp. to Def.'s Mot. to Dismiss at 5. The Government also states that it will produce evidence of Mr. Donald's involvement in the attempted murder of Joshua Gilbert and other rival gang members in October 2019, after his eighteenth birthday. *Id.*

If the Government produces evidence that Mr. Donald was involved in the attempted murder of Joshua Gilbert, such evidence could suffice to demonstrate ratification under *Wong*. Similarly, the testimony of cooperating defendants or evidence regarding communications between Mr. Donald and any of his co-conspirators or co-Defendants may also be sufficient to establish his ongoing participation in the conspiracy after his eighteenth birthday.

The Court does not agree with the Government's contention that a lack of affirmative withdrawal alone, however, is sufficient to establish Mr. Donald's ongoing participation in the conspiracy. In the primary case relied upon by the Government, the Second Circuit declined to determine whether the standard rules that govern a defendant's liability for a racketeering conspiracy extend to the context of adult ratification of juvenile participation in a conspiracy. *Geraldo*, 687 Fed. App'x. at 108–09 ("A defendant's criminal liability for racketeering conspiracy does not depend on the commission of a predicate criminal act, *see Salinas v. U.S.*, 522 U.S. 52, 63–66 (1997), and a defendant's participation in a conspiracy is generally held to continue until the conspiracy ends or the defendant affirmatively withdraws from it, *see U.S. v.*

*Salmonese*, 352 F.3d 608, 615 (2d Cir. 2003). At this juncture, however, we express no view as to whether those rules apply in the context of adult ratification of juvenile participation in a conspiracy.")

In his reply, Mr. Donald requests an evidentiary hearing in advance of trial "to determine whether there is adequate evidence of Mr. Donald's involvement in the October 17, 2019 incident to have him to proceed to trial upon allegations of criminal activity that occurred while he was a juvenile." Am. Reply to Gov't Opp. to Def.'s Mot. to Dismiss and Req. for Evid. Hrg., ECF No. 470 at 3 (Oct. 4, 2023).

To the extent that Mr. Donald claims that the allegations contained in the indictment are insufficient to satisfy the threshold demonstration of post-eighteen ratification, the Court is not persuaded. While the Second Circuit has declined to address this question directly, *see United States v. Scott*, 681 Fed. App'x 89, 93 n.5 (2d Cir. 2017), the Ninth Circuit has interpreted *Wong* as permitting the Government to satisfy the required threshold demonstration through no more than its allegations in the indictment. *See U.S. v. Camez,* 839 F.3d 871, 876 (9th Cir. 2016). More generally, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. U.S.*, 418 U.S. 87, 117 (1974). An indictment must "charge[ ] a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *U.S. v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (quoting *U.S. v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)). Yet, "an indictment need do little more than to track the language of the statute charged and state

the time and place (in approximate terms) of the alleged crime." *Stavroulakis*, 952 F.2d at 693 (internal quotation marks omitted).

Either way, an evidentiary hearing would not be productive or appropriate at this point. The Government has alleged facts sufficient to suggest Mr. Donald's continued participation in the conspiracy and confer jurisdiction under the JDA for the purposes of trial. *See Camez,* 839 F.3d at 874 (holding that where a Defendant is over 18 at the time of indictment and the Government has alleged that he committed the crime both before and after turning 18, "courts uniformly have held that adult prosecution is warranted."). The Government will bear the burden of proving Mr. Donald's post-eighteen ratification at trial, and, to the extent that it does not meet that burden, Mr. Donald may move for acquittal at the appropriate time.

Accordingly, Mr. Donald's [426] motion will be denied.

   ii. Motion in Limine Re: Evidence of 18+ Ratification and Motion for a Bill of Particulars

Although framed slightly differently, Mr. Jones raises similar concerns in his motion *in limine* regarding over-eighteen ratification. Jones Mot. Re: 18+ Ratification at 1. Mr. Jones argues that this Court should preclude the Government from entering any evidence regarding events that took place after May 3, 2021, the date on which the original indictment was filed in this case, in order to prove that Mr. Jones ratified his membership in the alleged conspiracy after he turned eighteen. *Id.* Mr. Jones notes that the overt acts with which he was charged—which include the murder of Shawn Warren on June 12, 2019, and the attempted murder of Joshua Gilbert on October 17, 2019—both occurred before he turned eighteen on April 6, 2020. *Id.* If the Government cannot prove that he continued to participate in the conspiracy after his eighteenth birthday but before he was indicted, Mr. Jones argues that the JDA would govern this prosecution, thereby limiting this Court's jurisdiction over him. *Id.* at 2. Mr. Jones has also filed

a motion for a bill of particulars, requesting that the Government identify the evidence it seeks to admit, in order to prove whether Mr. Jones ratified his membership in the alleged conspiracy after April 6, 2020, and before May 3, 2021. Jones Mot. for Bill of Particulars at 1.

The Government responds that it does not intend to rely solely on evidence after the return of the indictment to establish ratification of the conspiracy, in accordance with this Court's prior order permitting Mr. Jones to withdraw his guilty plea. Gov't Omnibus Opp. to Def. Jones's Mots. in Limine, ECF No. 393 at 6–7 (Aug. 21, 2023) ("Gov't Opp. Re: Jones MILs"); Order, ECF No. 374 at 13, n.6 (July 21, 2023). Instead, the Government intends to rely on phone calls and cooperator testimony to establish Mr. Jones's alleged ratification of the conspiracy. Gov't Opp. Re: Jones MILs at 7. The Government maintains, however, that evidence of overt acts that occurred after the indictment was returned—most significantly, through an alleged gang-related fight at the Donald W. Wyatt Detention Facility—should remain admissible as proof of Mr. Jones's membership in the conspiracy. *Id.* The Government further argues that a bill of particulars is unnecessary, as it asserts that Mr. Jones is aware of the evidence it intends to use in order to prove ratification—jail calls and cooperator testimony from after his eighteenth birthday and before the return of the indictment—and has access to the relevant exhibits. *Id.* at 5–6.

The Court agrees.

While this Court's previous order indicated that evidence of the alleged gang-related fight at Wyatt would not be sufficient to prove Mr. Jones's post-eighteen ratification, Order, ECF No. 374 at 13 n.6 ("[T]o the extent that the Government intends to rely on a prison altercation that occurred in January 2023, this would not be sufficient because the relevant time period for ratification is the time period between when Mr. Jones turned eighteen and the date of the

Indictment."), such evidence is admissible at trial as to Mr. Jones's alleged membership in the conspiracy generally.

As the Government has represented that it intends to introduce evidence from after Mr. Jones's eighteenth birthday but before the return of the indictment, in order to establish ratification, the Court will deny Mr. Jones's [386] motion as moot.

As to the bill of particulars, the Court agrees with the Government. The information already provided to Mr. Jones is sufficient to allow him to prepare his defense in advance of trial.

Accordingly, the Court will deny Mr. Jones's [385] motion.

### 2. *Motions to Strike the Special Sentencing Factors*

Mr. Donald and Mr. Wright argue that the Government has improperly charged the Defendants with a non-existent crime, aggravated RICO conspiracy, by including various alleged murders as special sentencing factors. Wright Mot. to Strike at 2; Donald Mot. to Strike. They note that the government has chosen to indict them with RICO conspiracy under 18 U.S.C. § 1962(d), as opposed to a substantive RICO count under 18 U.S.C. § 1962(c). *Id.* at 3. If Defendants had been charged with a substantive RICO offense under 1962(c), they argue that the Government would have had to prove the substantive elements of the state murders, which are currently listed as special sentencing factors. Wright Mot. to Strike at 3–4. They therefore argue that the Special Sentencing Factors, which increase the potential penalty to a life sentence, are improper because they allow the Government to seek a harsher punishment without requiring it to prove beyond a reasonable doubt that the Defendants actually committed or aided and abetted the alleged murder. *Id.*

The Government responds that the RICO statute permits a maximum penalty of life imprisonment and such a sentence does not require the defendant to have been found guilty of

personally committing the object of the conspiracy. Gov't Omnibus Opp. to Defs.' Mots. to Strike, ECF No. 459 at 2–3, 5 (Sept. 22, 2023). It argues that special sentencing factors are available under both substantive RICO, 18 U.S.C. § 1962(c), and RICO conspiracy, 18 U.S.C. § 1962(d). *Id.* at 6. Ultimately, the Government argues that charging decisions are left to the executive branch, and that the Government was within its right to charge Defendants under either 18 U.S.C. § 1962(c) or §1962(d). *Id.* at 8–9.

The Court agrees.

The elements of RICO conspiracy laid out in 18 U.S.C. § 1962 should not be conflated with the sentencing scheme laid out in 18 U.S.C. § 1963. Under 18 U.S.C. § 1963, the maximum penalty for RICO conspiracy is 20 years, unless the conspiracy is based on a racketeering activity for which the maximum penalty includes life imprisonment (in which case the maximum penalty for the RICO conspiracy is life). Defendants argue that in order to seek the enhanced penalty, the Government should have charged the Defendants with racketeering murder, which would have required them to prove beyond a reasonable doubt the elements of the state murder charge. But murder may be a predicate racketeering act, and a defendant may be found guilty of RICO conspiracy, including the enhanced penalty element, without having actually committed the murder. *See U.S. v. Capers*, 20 F.4th 105, 121 (2d Cir. 2021) ("Capers's guilt of the offense charged in the indictment, including the enhanced penalty element, was not dependent on whether he actually did murder McQueen (though of course, the proof that he did murder McQueen was highly probative of the charge that Capers had agreed to join an enterprise that was dedicated, among other criminal goals, to murdering enemies of the Leland Crew)." Because the indictment charged Capers under § 1962(d), conviction "required proof beyond a reasonable doubt only that Capers and others agreed to do those things, not that Capers (or anyone else, for

that matter) ever actually committed those crimes."); *see also U.S. v. Fernandez*, 388 F.3d 1199, 1259 (9th Cir. 2004) ("It is a well-established principle of RICO law that a murder conspiracy can be a predicate racketeering act under § 1962(c) . . . and that predicate racketeering acts that are themselves conspiracies may form the basis for a charge and eventual conviction of conspiracy under § 1962(d).").

Accordingly, Mr. Donald's and Mr. Wright's [453] and [457] motions to strike will be denied.

### B.  Motions *in Limine*

Defendants and the Government have filed various motions *in limine*, which the Court has grouped into the following categories: (1) case history and documents, (2) prior bad acts, (3) hearsay, (4) expert witnesses and evidence, (5) lay opinion testimony, and (6) rap lyrics, music, and videos.

The Court will address each topic in turn.

As a preliminary matter, the Court notes that Mr. Jones has filed a motion to join his co-defendants' motions *in limine*. Jones Mot. to Join MILs. The Government has no objection to this motion. Gov't Omnibus Opp. to Jones's MILs at 2.

Accordingly, the Court will grant Mr. Jones's [388] motion to join his co-defendants' motions *in limine*. The Court will also construe the Government's motions *in limine* as to Mr. Jones's co-defendants as applying to him as well.

#### 1. *Case History and Documents*

##### i.   The Indictment

The decision as to whether to provide the indictment to the jury "rests in the sound discretion of the court." *U.S. v. Press*, 336 F.2d 1003, 1016–1017 (2d Cir. 1964); *see also Shayne*

*v. U.S.*, 255 F.2d 739, 743 (9th Cir.), cert. denied, 358 U.S. 823 (1958); *Garner v. U.S.*, 244 F.2d 575 (6th Cir.), cert. denied, 355 U.S. 832 (1957). While some courts have found that the indictment "serves as a helpful guide in delineating the issues the jury may be called on to decide[,]" others have been concerned that overemphasis of the indictment may lead juries to construe the indictment as evidence of guilt. *Id.*

Mr. Hayes has moved to exclude the indictment because he does not believe it is necessary for jurors to make sense of the allegations, especially given the single count. Hayes Mot. Re: Indictment at 1. He also argues that the risk of prejudice is high, as the jury may mistake the indictment as evidence of Defendants' guilt. *Id.* Instead, Mr. Hayes suggests that "the jury will have ample opportunity to understand the nature of the charges and elements it must find both at the beginning of the case (when it receives preliminary instructions from the court) and when it receives the jury charge at the end." *Id.*

The Government argues that the complexity of charges is not a pre-requisite to providing the jury with the indictment. Gov't Opp. to Hayes Mot. Re: Indictment, ECF No. 331 at 3 (Mar. 14, 2023). Moreover, although the indictment charges only a single count of racketeering conspiracy, the Government emphasizes that it "sets forth across ten pages the background of the racketeering conspiracy, which spanned from 2015 until 2021, [and] the purposes of the enterprise," as well as multiple overt acts and special sentencing factors. *Id.* Given the complexity of the charge and the anticipated volume of evidence, the Government submits that the indictment will serve as a helpful aid to the jurors during deliberations. *Id.* at 4–5. Finally, the Government argues that any risk of prejudice may be addressed by a limiting instruction. *Id.*

As discussed during the motions hearing, in keeping with this Court's standard practice, the indictment will not be provided to the jury.

Accordingly, Mr. Hayes's [305] motion will be denied as moot.

## ii.  Withdrawn Guilty Plea

Federal Rule of Evidence 410(a) states that evidence of a guilty plea that was later

withdrawn is not admissible against the defendant who made the plea or participated in the plea

discussions.

Mr. Jones has moved under Federal Rule of Evidence 410 to preclude the Government

from introducing any evidence relating to his withdrawn guilty plea. Jones Mot. Re: Withdrawn

Plea. The Government does not object to Mr. Jones's motion and has indicated that it does not

intend to introduce such evidence at trial. Gov't Omnibus Opp. to Jones MILs at 2–3.

Accordingly, the Court will grant Mr. Jones's [387] motion.

### 2.  *Prior Bad Acts*

Evidence of prior convictions may be admitted in some circumstances for limited

purposes, such as proving motive or impeaching a witness's credibility. *See* Fed. R. Evid. 404(b)

(noting that evidence of past crimes "is not admissible to prove a person's character" but that

such evidence "may be admissible for another purpose, such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"); Fed. R.

Evid. 609(a) (outlining the "rules [that] apply to attacking a witness's character for truthfulness

by evidence of a criminal conviction" and requiring admission of prior convictions "if the court

can readily determine that establishing the elements of the crime required proving—or the

witness's admitting—a dishonest act or false statement"); *see also Lewis v. Velez*, 149 F.R.D.

474, 483 (S.D.N.Y. 1993) ("Convictions for crimes or other bad acts that bear a close

resemblance to actions alleged in the current case are likely to run afoul of Rule 404(b), because

they cause unfair prejudice to the party against whom they are offered by suggesting that the party has a propensity to commit such acts.").

At all times, such evidence is subject to the balancing test of Federal Rule of Evidence 403, which provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *See also U.S. v. Estrada*, 430 F.3d 606, 615–16 (2d Cir. 2005) ("[E]vidence of convictions for crimes involving 'dishonesty or false statement,' whether felonies or misdemeanors, must be admitted under Rule 609(a)(2) as being *per se* probative of credibility, while district courts, under Rule 609(a)(1), may admit evidence of a witness's felony convictions that do not constitute *crimen falsi*, subject to balancing pursuant to Rule 403.").

"In balancing the probative value against prejudicial effect under [Rule 609], courts examine the following factors: (1) the impeachment value of the prior crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness." *Stephen v. Hanley*, No. 03-CV-6226 (KAM) (LB), 2009 WL 1471180, at *4 (E.D.N.Y. May 21, 2009) (citing *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)).

Mr. Hayes has moved to preclude evidence of his criminal history, including prior convictions, pending charges or outstanding warrants, in the government's case in chief. Hayes Mot. Re: Prior Acts at 1. Mr. Wright has moved to preclude admission of any evidence of his irrelevant prior acts, including but not limited to video footage of Mr. Wright in the possession of firearms. Wright Mot. Re: Prior Acts at 1.

In response, the Government argues that evidence of Mr. Hayes's and Mr. Wright's prior bad acts committed within the timeframe of the charged racketeering conspiracy is admissible at

trial, both as proof of the charged racketeering enterprise and as evidence of the charged

conspiracy (and the offenses charged in the indictment). Gov't Opp. to Hayes's Mot. in Limine

Re: Use of Prior Bad Act Evidence at Trial, ECF No. 339 at 1 (Mar. 28, 2023) ("Gov't Opp to

Hayes's Mot. Re: Prior Acts"). The Government also argues that such evidence is admissible

under Federal Rule of Evidence 404(b), as relevant background regarding the conspiracy,

including the defendants' motivations, opportunity, intentions, and the relationships between

them. *Id.* at 21–22. It states that such evidence will also provide context for, and corroborate, the

testimony of cooperating witnesses. *Id.* at 22. Finally, the Government argues that such evidence

of Hayes's and Wright's prior acts is admissible under Rule 403's balancing test because it is

"highly probative" and not unduly prejudicial because it is not more sensational or inflammatory

than the crimes charged in the indictment. *Id.* at 25–26.

   The Court agrees, in part, for now.

   As a preliminary matter, "[i]t is well settled that in prosecutions for racketeering offenses,

the government may introduce evidence of uncharged offenses to establish the existence of the

criminal enterprise." *U.S. v. Baez*, 349 F.3d 90, 93 (2d Cir. 2003). As a result, to the extent that

the Government seeks to introduce evidence of prior arrests, convictions, and pending charges

relating to the Defendants from within the timeframe of the charged racketeering conspiracy as

evidence of the conspiracy, such evidence is, as the Government notes, not prior bad act

evidence under Rule 404(b). *U.S. v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992), cert. denied,

510 U.S. 856 (1993) ("An act that is alleged to have been done in furtherance of the alleged

conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the

very act charged."); *see also U.S. v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) ("[E]vidence of

uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if

it arose out of the same transaction or series of transactions as the charged offense, if it is

inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to

complete the story of the crime on trial." (quoting *U.S. v. Gonzalez*, 110 F.3d 936, 942 (2d Cir.

1997) (internal quotation marks and indicators of alterations from the original omitted))). Such

evidence is therefore admissible as direct evidence of the alleged racketeering conspiracy. *U.S. v.

Miller*, 116 F.3d 641, 682 (2d Cir. 1997) (under Rule 404(b), the government may properly

introduce evidence of violent acts not charged in the indictment "as proof of the existence of the

RICO enterprise alleged in the indictment which used such acts of violence in furtherance of its

narcotics conspiracy").

Of course, the Government may not introduce evidence of any unrelated prior bad acts

allegedly committed by a Defendant simply because such acts occurred between 2015 and 2021.

Rather, the Government must focus on evidence of incidents, charged or uncharged, that are

"alleged to have been done in furtherance of the alleged conspiracy" or that are inextricably

linked to the conspiracy. *Concepcion*, 983 F.2d at 392; *Carboni*, 204 F.3d at 44. At the same

time, "proof of the enterprise and pattern elements of racketeering 'may well entail evidence of

numerous criminal acts by a variety of persons.'" *U.S. v. Basciano*, 599 F.3d 184, 207 (2d Cir.

2010) (quoting *U.S. v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992)). The Government is therefore

not limited to evidence of the Defendants' own acts; it may also introduce evidence of acts

committed by co-conspirators or co-defendants. *See* Gov't Opp to Hayes's Mot. Re: Prior Acts at

16–17.

The Government also seeks to introduce "various evidence of the nature and extent of

defendants' relationships and association with one another and other co-conspirators in the East

End gang[,]" including prior acts, arrests with one another, time spent incarcerated together, and

communications about engaging in criminal conduct together. *Id.* at 20. "Evidence of prior bad acts is [also] admissible to 'inform the jury of the background of the conspiracy charged, in order to help explain how the illegal relationship between participants in the crime developed, or to explain the mutual trust that existed between coconspirators.'" *U.S. v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *U.S. v. Dupree*, 870 F.3d 62, 76 (2d Cir. 2017)); *see also U.S. v. Pipola*, 83 F.3d 556, 566 (2d Cir. 1996) ("One legitimate purpose for presenting evidence of extrinsic acts is to explain how a criminal relationship developed; this sort of proof furnishes admissible background information in a conspiracy case. Such proof may also be used to help the jury understand the basis for the co-conspirators' relationship of mutual trust." (internal citations omitted)). To the extent the Government wishes to use prior acts evidence of how the alleged co-conspirators built trust as a method of proving the existence of a conspiracy, this may be appropriate under Rule 404(b).

Yet, the Government also mentions other evidence of the longstanding relationships between the co-defendants and co-conspirators, including social media evidence and media extracted from cell phones. Gov't Opp. to Hayes's Mot. Re: Prior Acts at 17–18. The Government does not describe with any particularity the nature of such evidence. However, to the extent that other, less-prejudicial evidence exists regarding the relationships between co-defendants and co-conspirators, which could establish that they knew and trusted one another enough to engage in criminal activity together, such evidence decreases the probative value of the evidence regarding prior acts, arrests, incarceration, and communications regarding criminal activity. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice . . . or needlessly presenting cumulative evidence.").

Overall, while some prior acts evidence may be admissible, as described above, there is a point at which such evidence will become cumulative and unduly prejudicial. *See U.S. v. Ilori*, No. 21-cr-746 (MKV), 2022 WL 2452258, at *4 (S.D.N.Y. July 5, 2022) (finding that evidence of prior acts may be admissible as intrinsic to the charged conduct but noting such evidence may ultimately be precluded under Rule 403 where such evidence "is substantially outweighed by a danger of unfair prejudice" (quoting Fed. R. Evid. 403)).

Given that the Court needs additional context in order to determine whether such evidence is admissible or cumulative and unduly prejudicial, the Court cannot categorically determine whether prior acts testimony can be properly admitted.

Accordingly, the Court will deny without prejudice to renewal the [301] and [311] motions as they relate to prior acts evidence.

### 3. Hearsay

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *U.S. v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id.* (citing Fed. R. Evid. 802).

At all times, any hearsay analysis is subject to Rule 403, which provides that, although relevant and admissible, hearsay evidence may be excluded "if its probative value is substantially outweighed by a danger of one of more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

i.   General Hearsay

Mr. Hayes has moved to generally "bar the government from offering at trial testimonial hearsay where the declarant does not testify at trial." Hayes Mot. Re: Hearsay at 1.

The Government generally disputes Mr. Hayes's understanding of hearsay law but concludes that "[i]t is difficult, if not impossible, for the Government to respond [to his motion] in the abstract." It therefore urges this Court to deny Mr. Hayes's motion as overbroad.

In the absence of specific information, it is difficult for the Court to address this issue. Since Mr. Hayes has not identified any specific statements or testimony that he seeks to exclude as hearsay at this point, the Court will deny his [304] motion as moot. Mr. Hayes may, of course, raise any hearsay objections as they arise during trial.

ii.   Co-Conspirator Statements

Co-conspirator statements are generally admissible as "not hearsay if . . . [t]he statement is offered against a party and it is a statement by a co[-]conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). In order to admit an extra-judicial statement by a co-conspirator under Rule 801(d)(2)(E), the court must find by a preponderance of the evidence "(1) that there was a conspiracy, (2) that its members included the declarant and the party against whom the statement is offered, and (3) that the statement was made both (a) during the course of and (b) in furtherance of the conspiracy." *U.S. v. Diaz*, 176 F.3d 52, 83 (2d Cir. 1999) (quoting *U.S. v. Tracy*, 12 F.3d 1186, 1196 (2d Cir. 1993)).

Courts consider the contents of a co-conspirator's statement when determining "the existence of the conspiracy and the participation therein of the declarant and the party against whom the statement is offered," Fed. R. Evid. 801(d)(2)(E); *see also Bourjaily v. U.S.*, 483 U.S.

171, 181 (1987), however, "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," *U.S. v. Gigante*, 166 F.3d 75, 82 (2d Cir. 1999).

When considering the admissibility of co-conspirator statements in the Second Circuit, courts generally will conditionally admit co-conspirator statements during the Government's case-in-chief and then "determine, when all the evidence is in, whether . . . the prosecution has proved participation in the conspiracy, by the defendant against whom the hearsay is offered, by a fair preponderance of the evidence." *U.S. v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969). If the Court finds that the prosecution has not met its burden, it will "instruct the jury to disregard the hearsay" or declare a mistrial if the hearsay is a "large proportion of the proof" against the defendant. *Id.*; *see also U.S. v. Feola*, 651 F. Supp. 1068, 1129–30 (S.D.N.Y. 1987) ("[A] *Geaney* ruling . . . is provided only during trial, and relies for its basis on the facts adduced at trial, including evidence received subject to a motion to strike at the close of the Government's case.").

Mr. Hayes has moved to exclude any co-conspirator statements that the Government seeks to introduce against him "unless the government first is able to demonstrate to the Court sufficient evidentiary support to establish that the defendant was a part of the specific conspiracy alleged in the indictment at all relevant times, and that each proffered statement was made in the furtherance of the conspiracy that included Mr. Hayes as a member." Hayes Mot. Re: Certain Acts and Statements at 1. Mr. Hayes proposes that the Court hold an evidentiary hearing in order to make these determinations prior to admitting any co-conspirator statements. *Id.* at 4. Mr. Hayes further argues that statements made before the formation of a conspiracy or after its cessation may not be admitted under Rule 801(d)(2)(E), and that such statements are only admissible if uttered while Mr. Hayes was a member of the conspiracy. *Id.* at 2–3.

30

The Government argues that under *Geaney*, Mr. Hayes's request for an evidentiary hearing is "contrary to existing law." Gov't Resp. to Hayes Mot. to Preclude Co-Conspirator Statements without First Demonstrating a Conspiracy, ECF No. 319 at 1 (Mar. 3, 2023). Instead, the Government urges the Court to admit alleged co-conspirator statements conditionally, subject to the Government demonstrating that they were made during and in furtherance of a conspiracy before the conclusion of the Government's case. *Id.* at 4.

The Court agrees.

*Geaney* is the standard practice in the Second Circuit. *See U.S. v. Rowland*, No. 3:14-cr-79 (JBA), 2014 WL 3908115, at *1 (D. Conn. Aug. 11, 2014) (noting that district courts in this circuit "almost universally reject" requests for pretrial hearings in order to determine whether the conspiracy alleged in the indictment can be proven by a preponderance of the evidence, thus allowing co-conspirator statements to be admitted at trial under Fed. R. Evid. 801(d)(2)(E)). Courts generally do not hold evidentiary hearings regarding co-conspirator statements before trial because doing so would require the Court "to undertake a mini-trial, significantly prolonging the proceedings and affording the defendant a complete preview of the government's evidence." *U.S. v. Smith*, No. 3:10-cr-148 (EBB), 2012 WL 2338707, at *1 (D. Conn. June 19, 2012).

Accordingly, the Court denies Mr. Hayes's [300] motion and will admit alleged co-conspirator statements conditionally, subject to the Government making the required showings regarding the existence of the conspiracy and Mr. Hayes's participation in it.

### iii.  The Confrontation Clause and Bruton Doctrine

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the "right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. In *Bruton*, the

Supreme Court held that a criminal defendant's Sixth Amendment right to confrontation was violated by admission of a third party's post-arrest confession or statement that implicates a co-defendant, where the declarant did not take the stand and was not subject to cross-examination. *Bruton v. U.S.*, 391 U.S. 123, 136–37 (1968). Since then, the Second Circuit has consistently held that *Bruton* issues may be managed by redacting the confession or statement to remove any reference to the co-defendant. *U.S. v. Jass*, 569 F.3d 47, 56 (2d Cir. 2009) ("[A] redacted statement in which the names of co-defendants are replaced by neutral pronouns, with no indication to the jury that the original statement contained actual names, and where the statement standing alone does not otherwise connect co-defendants to the crimes, may be admitted without violating a co-defendant's Bruton rights.") (quoting *U.S. v. Tutino*, 883 F.2d 1125, 1135 (2d Cir. 1989)).

Mr. Hayes has moved to preclude the admission of any co-conspirator or co-defendant post-arrest confessions or statements under *Bruton*. Hayes Mot. Re: Co-Conspirator Statements. He has not identified any specific statements that he seeks to exclude.

In response, the Government states that it "does not intend to introduce a co-defendant's out-of-court post-arrest statement or confession at trial that runs afoul of *Bruton* or the requirements imposed by post-*Bruton* case law." Gov't Opp. to Hayes Mot. to Preclude Co-Def. or Co-Conspirator Post-Arrest Statements, ECF No. 327 at 4 (Mar. 10, 2023). To the extent that it introduces any out-of-court statements by a non-testifying co-defendant that implicate Mr. Hayes, the Government represents that it will properly redact such statements. *Id.*

Because Mr. Hayes has not identified any specific statements that he seeks to exclude, the Court cannot assess whether such evidence would create a *Bruton* issue. Given the Government's representations that it does not intend to introduce any evidence that would run afoul of *Bruton*,

the Court will deny Mr. Hayes's motion without prejudice to renewal, should the Government seek to offer out-of-court testimonial statements made by a non-testifying defendant.

Accordingly, Mr. Hayes's [299] motion will be denied without prejudice to renewal consistent with this ruling.

### iv.  Grand Jury Testimony

Under Fed. R. Evid. 801(d)(1)(A), a statement is not hearsay if "the declarant testifies and is subject to cross-examination about a prior statement" and the statement "is inconsistent with the declarant's testimony and was given under penalty of perjury at a trial, hearing, or other proceeding or in a deposition[.]" The Second Circuit has held that a witness's grand jury testimony "falls squarely within Rule 801(d)(1)(A)" if a witness has testified to facts before a grand jury and then forgets or denies them at trial. *U.S. v. Marchand*, 564 F.2d 983, 999 (2d Cir. 1977); *U.S. v. Truman*, 688 F.3d 129, 142 (2d Cir. 2012) ("[W]here, as here, a witness who testifies under oath and is subject to cross-examination in a prior state court proceeding explicitly refuses to answer the same questions at trial, the refusal to answer is inconsistent with his prior testimony and the prior testimony is admissible under Rule 801(d)(1)(A).").

In line with this case law, the Government seeks to introduce prior inconsistent statements of a witness before the grand jury as substantive evidence at trial. Gov't Mot. Re: Grand Jury Testimony at 1.

Defendants have not opposed the Government's motion.

Accordingly, the Court grants the Government's [295] motion.

### v.  Defendants' Hearsay Statements

The Government has moved to preclude Defendants from introducing any of their own prior statements, unless introduced through their own testimony. Gov't Mot. Re: Defs.' Hearsay

Statements at 1. The Government argues that such statements are inadmissible hearsay not falling within any exception. *Id.* at 1, 3; *see U.S. v. Kadir*, 718 F.3d 115, 124 (2d Cir. 2013) ("A defendant may not introduce his own prior out-of-court statements because they are 'hearsay, and . . . not admissible.'") (citation omitted); *U.S. v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").

Defendants have not filed any opposition to the Government's motion.

As a general matter, the Court agrees with the Government.

However, since there is no indication that Defendants intend to introduce their own prior statements without taking the stand, the Court will deny the Government's [307] motion without prejudice to renewal during trial.

### 4. Expert Witnesses and Evidence

#### i. The Gang Expert

Federal Rule of Evidence 702 states that a witness may testify as an expert if they are qualified "by knowledge, skill, experience, training, or education." "Testimony is properly characterized as 'expert' only if it concerns matters that the average juror is not capable of understanding on his or her own. *U.S. v. Mejia*, 545 F.3d 179, 194 (2d Cir. 2008); *see also U.S. v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). "It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005) (citations omitted).

District courts are responsible for performing a gatekeeping function to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. To make this determination, courts consider "the theory's testability,

the extent to which it has been subjected to peer review and publication, the extent to which a technique is subject to standards controlling the technique's operation, the known or potential rate of error, and the degree of acceptance within the relevant scientific community." *U.S. v. Romano*, 794 F.3d 317, 330 (2d Cir. 2015) (citing *Daubert*, 509 U.S. at 593–94). "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213–14 (2d Cir. 2009) (quotation marks and citation omitted). Additionally, the Second Circuit has emphasized that "when a law enforcement official testifies as both a fact and an expert witness, the danger that his expert testimony will stray from applying reliable methodology" and instead convey to the jury "his sweeping conclusions about a defendant's activities is particularly acute." *U.S. v. Cruz*, 363 F.3d 187, 195 (2d Cir. 2004) (quoting *U.S. v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003)) (quotation and punctuation marks omitted).

The party proffering the expert testimony bears the burden of demonstrating by a preponderance of the evidence that the expert testimony is admissible. *U.S. v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). However, "other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Zerega Ave. Realty Corp.*, 571 F.3d at 213– 14 (citations and quotation marks omitted).

At trial, the Government intends to offer the testimony of retired Captain Brian Fitzgerald, whom they identify as "an expert in Bridgeport gangs." Gov't Opp. to Donald Mot. to Exclude Expert, ECF No. 455 at 1 (Sept. 22, 2023). Based on his management of the investigative division of the Bridgeport Police Department from 2016–2021, Captain Fitzgerald is expected to testify about the existence and names of gangs in Bridgeport during that period,

the geographical areas controlled by the gangs, the structure of the gangs, and the general manner of communications within and between neighborhood gangs. *Id.* at 5.

Mr. Donald argues that Captain Fitzgerald's experience working in the Bridgeport Police Department within a "relatively small City with the same groups of individuals that will be mentioned at trial" raises concerns that he may testify as a "hybrid" expert and fact witness. Donald Mot. Re: Expert Testimony at 1. Mr. Donald therefore challenges the relevance and reliability of Captain Fitzgerald's testimony and requests a *Daubert* hearing in advance of trial. *Daubert v. Dow Chemical*, 509 U.S. 579, 597 (1993) (holding that "the Rules of Evidence—especially Rule 702—do assign the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"). He also requests that this Court exclude Captain Fitzgerald's testimony altogether or hold a hearing, outside of the presence of the jury, to determine the proper scope of such evidence. *Id.* at 2.

The Government responds that it intends to comply with *Mejia*, limiting Captain Fitzgerald's testimony to his specialized knowledge of information that is not known to the average juror, including "the existence of street level gangs in Bridgeport, the geographical areas controlled by the groups, and the structure and territory of these groups in the City of Bridgeport." Gov't Opp. to Donald Mot. to Exclude Expert at 6. Captain Fitzgerald will not offer any testimony about the Defendants on trial or their alleged membership in the East End gang. *Id.* The Government points to case law from within and beyond this District in which other courts have allowed law enforcement gang testimony. *Id.* at 4, citing, among others, *U.S. v. Stanley*, 2016 WL 7104825 (D. Conn. Dec. 4, 2016), *aff'd*, 808 Fed. App'x 25 (2d Cir. 2020); *U.S. v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022); *U.S. v. Rios*, 830 F.3d 403, 414 (6th Cir. 2016); *U.S. v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014). Finally, the Government argues

that a *Daubert* hearing is not necessary or appropriate, given that Mr. Donald has not made any

claims regarding Captain Fitzgerald's qualifications or the reliability of his testimony.

The Court agrees.

Given that Mr. Donald has not raised any issues related to Captain Fitzgerald's

qualifications or the reliability of his testimony, a *Daubert* hearing is neither necessary nor

appropriate. *See U.S. Bank Nat'l Assoc. v. PHL Variable Life Ins. Co.*, 112 F.Supp.3d 122, 134

(S.D.N.Y. 2015) (finding that where a party had no objection to the proffered expert's

methodology, but challenged the testimony on other grounds, a *Daubert* motion was

inappropriate); *see also Daubert*, 509 U.S. at 590 (explaining that the relevant standard for

expert testimony is one of "evidentiary reliability"); *Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380

F.Supp.2d 334, 350 (2d Cir. 2005) (the *Daubert* inquiry requires courts to "examine not only the

validity of the expert's methodology, but also the analytical connection between the application

of the expert's proffered theory to the facts at issue in the case"); *Amorgianos v. Nat'l R.R.*

*Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) ("shaky but admissible evidence" should be

challenged not through exclusion under *Daubert*, but through traditional means, including

vigorous cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof).

Mr. Donald's concerns instead seem to focus on the scope of Captain Fitzgerald's

testimony and the related risk of introducing inadmissible and potentially prejudicial evidence.

Donald Mot. Re: Expert Testimony at 2. During the motions hearing, the Government

emphasized that it intends to limit Captain Fitzgerald's testimony to "a general, 10,000 foot

view," in order to comply with *Mejia*. The Government has also represented that Captain

Fitzgerald will not offer any evidence pertaining to the Defendants or their alleged participation

in the East End gang. Gov't Opp. to Donald Mot. to Exclude Expert at 6.

Accordingly, based on the Government's representations, the Court will deny Mr.

Donald's [442] motion without prejudice to renewal, should the expert's testimony exceed the

scope discussed in this order.[3]

### ii.   DNA and Ballistics Expert

Mr. Hayes has moved to preclude or restrict the expert testimony of Government witness

Lisa Ragaza, an employee of the State of Connecticut's Department of Public Safety and

Emergency Services' Forensic Laboratory. Hayes Mot. Re: Firearms and Ballistics Evid. at 1.

Ms. Ragaza is expected to testify as a forensics firearms expert, for the purpose of making

certain firearms and ballistics comparisons. *Id.* Mr. Hayes raises concerns about Ms. Ragaza's

methodology and the reliability of her testimony and requests a *Daubert* hearing in advance of

trial. *Id.* at 5.

The Government responds that there is no need for a *Daubert* hearing because "[Ms.

Ragaza's] testimony is based on a reliable methodology, her testimony will assist the jury, and

her testimony will not be unfairly prejudicial." Gov't Opp. to Mots. Re: Expert Testimony at 11.

The Government further argues that the firearm testimony advanced here has never been

---

[3] Given the concern raised by Mr. Donald, that because Captain Fitzgerald had been involved in his seizure and arrest, the Government may be leaving open the possibility of him addressing this matter on any redirect examination, if Mr. Donald or some other Defendant "opens the door," Gov't Opp. to Donald Mot. to Exclude Expert at 5 n.2**,** the Court will simplify matters, and foreclose Captain Fitzgerald from offering any testimony, fact or otherwise, regarding the underlying alleged crimes in this case, or any of the Defendants and their alleged involvement. If the Government wishes Captain Fitzgerald to offer any such testimony, they may choose to call him as a fact witness, but he then may offer no testimony in this case as a "gang expert." *See Mejia*, 545 F.3d at 196 ("When case agents testify as experts, they gain unmerited credibility when testifying about factual matters from first-hand knowledge. . . . . [F]actual testimony about matters that required no specialized knowledge clearly implicates these concerns, and the district court erred in allowing to testify beyond the bounds for which expert testimony would have assisted the jury in understanding the evidence." (internal quotation marks and citation omitted)).

precluded by another court and there is no reason to exclude Ms. Ragaza's testimony now. *Id.* at 6.

At the motions hearing, the Court stated that it would deny Mr. Hayes's motion for a *Daubert* hearing because the issues he raised likely go to the weight of the evidence, rather than its admissibility. The Court indicated, however, that Mr. Hayes was free to renew his objections during trial after *voir dire*.

Accordingly, the [297] motion will be denied.

### iii.  Inconclusive DNA Evidence

Mr. Wright has moved to preclude the Government from introducing evidence regarding an "inconclusive" DNA testing result from a .45 caliber magazine found in Quasan Minick's bedroom, which Mr. Wright believes the Government will try to connect to the drive-by shooting of Myreke Kenion. Wright Mot. Re: DNA (June 20, 2023); Wright Mot. Re: Inconclusive DNA (Feb. 22, 2023). Mr. Wright argues that a single, inconclusive DNA test result has no probative value, but that the "potential prejudicial value in favor of the government and against Mr. Wright is enormous[,]" since jurors may speculate about the probability of a match and draw improper inferences. *Id.* at 2–3.

The Government replies that there is no basis to exclude the inconclusive DNA result, and that any issues raised by Mr. Wright go to the weight, rather than admissibility, of the evidence. Gov't Opp. to Mots. Re: Expert Testimony. The Government cites a number of cases from other Circuits, in which inconclusive DNA test results were admitted. *See U.S. v. Mariano*, 636 F. App'x 532, 535, 537–38 (11th Cir. 2016) (permitting inconclusive DNA evidence because such evidence was relevant and made it "more or less probable" that the defendant possessed the pistol in question); *U.S. v. Allen*, 610 Fed. App'x 773, 777–78 (10th Cir. 2015)

(holding that it was not error to admit inconclusive DNA evidence because, "[w]hile the probative value of this evidence was minimal at best, the danger of unfair prejudice against Allen was even more slight."); *U.S. v. Baylor*, 537 Fed. App'x 149, 162 (4th Cir. 2013) (the district court did not abuse its discretion by permitting a DNA expert to testify about inconclusive results of her test of a hat recovered after the robbery, finding that such testimony was "relevant" because defendant "could not be ruled out as a possible minor contributor to DNA").

The Court agrees with the Government.

The inconclusive DNA test result is not, in and of itself, prejudicial. To the extent that Mr. Wright is concerned about jurors misinterpreting the test result or drawing improper inferences, this argument goes to the weight of the evidence, not its admissibility. *Daubert*, 509 U.S. at 595 ("The focus [of the admissibility inquiry], of course, must be solely on principles and methodology, not on the conclusions that they generate."); *Campbell ex rel. Campbell v. Metropolitan Property & Cas. Ins. Co.*, 239 F.3d 179, 186 (2d Cir. 2001) (arguments regarding gaps or inconsistencies in an expert's reasoning, or different interpretations stemming from the testimony, "go to the weight of the evidence, not to admissibility"). Alone, this is not a sufficient reason to exclude the evidence. To the extent that Mr. Wright feels the evidence is mischaracterized by the Government at trial, he may raise his objections at that time. And, he is, of course, free to address these issues upon cross-examination.

Accordingly, the Court will deny Mr. Wright's [309] and [361] motions.

### 5. *Lay Witness Testimony*

Federal Rule of Evidence 701 permits lay opinion testimony that is "rationally based on the witness's perception" or "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "not based on scientific, technical, or other specialized

knowledge within the scope of Rule 702." Generally, a rational perception is one that involves

firsthand knowledge or observation. *U.S. v. Yannotti*, 541 F.3d 112, 125 (2d Cir. 2008). "Where

the jury is 'in as good a position as the witness to draw the inference' to which the opinion

relates, the opinion is not helpful and should not be admitted." *U.S. v. Walker*, 974 F.3d 193, 205

(2d Cir. 2020) (quoting U*.S. v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992)).

     Mr. Hayes seeks to preclude two forms of lay opinion testimony. First, he seeks to bar the

Government's law enforcement witnesses from offering lay opinions about the defendant, his co-

defendants, or the meaning of the evidence. Hayes Mot. Re: Law Enforcement Lay Opinion

Testimony at 1. He further requests that their testimony be limited to facts within their personal

knowledge based upon personal observations. *Id.* Second, Mr. Hayes seeks to prevent the

Government from introducing testimony from lay witnesses to identify Mr. Hayes as an

individual seen on various surveillance cameras in Bridgeport on March 5, 2019. Hayes Mot. Re:

Observations from Surveillance Videos at 1.

     The Government opposes both motions. Gov't Opp. to Mots. Re: Lay Witness Opinion

Testimony, ECF No. 325 (Mar. 10, 2023). The Government states that it intends to call

numerous law enforcement witnesses to testify as lay witnesses,[4] but that such testimony will be

limited to testimony based on personal observations. *Id.* at 10. As to the surveillance footage

issue, the Government intends to call one or more witnesses who have spent substantial amounts

of time with Mr. Hayes to identify him in the surveillance video footage. *Id.* at 6. This testimony,

it argues, will be based on the witness's personal observations and perception and is therefore

admissible under Rule 701. *See Walker*, 974 F.3d at 205 (finding that a probation officer's in-

court identification of the defendant in surveillance footage was proper). Because the jury is

---

[4] The Government intends to call one law enforcement witness, retired Captain Brian Fitzgerald, as an expert witness, as described above.

likely to be less familiar with Hayes's appearance, mannerisms, and demeanor than the witness, the Government argues that lay witness testimony will be helpful to the jury in this context and is admissible under Rule 701. *Walker*, 974 F.3d at 205.

The Court agrees for now.

As to the law enforcement lay witness testimony, in the absence of information regarding the specific witnesses or testimony that Mr. Hayes objects to, it is difficult to assess his motion. The Government represents that it does not intend to introduce testimony of law enforcement lay witnesses that goes beyond the limits of Rule 701. *U.S. v. Kaplan*, 490 F.3d 110, 118 (2d Cir. 2007) ("[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life" (quoting *U.S. v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005))).

Accordingly, the Court denies Mr. Hayes's [302] motion without prejudice to renewal during trial to the extent necessary.

As to the surveillance footage issue, the Court does not see any problem with an in-court identification by a lay witness regarding an individual shown on surveillance footage, provided that the identification is based on the witness's personal observations and perceptions. *See Walker*, 974 F.3d at 205 (affirming the district court's finding that a probation officer's in-court identification of the defendant in surveillance footage was probative "[b]ecause of her familiarity with [the defendant]—including with his general appearance at the time of the robbery[.]"). To the extent that the identification is provided by a non-law enforcement witness, there is little risk that the jury would misconstrue the testimony as expert testimony. To the extent that a law enforcement witness provides the identification, the Government will need to ensure that it is clear to the jury that the testimony is a lay opinion, and that it remains within the bounds of Rule 701, as described above.

Accordingly, the Court will deny Mr. Hayes's [303] motion without prejudice to renewal during trial to the extent necessary.

### 6. Rap Music Lyrics and Video

The admissibility of rap music, lyrics, and videos as substantive evidence in a criminal trial presents a number of legal issues, both evidentiary and constitutional.

First, because it involves out-of-court statements, such evidence might qualify as hearsay, *Dupree*, 706 F.3d at 136 (defining hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'") (quoting Fed R. Evid. 801(c))); might "fall[ ] within an enumerated [hearsay] exception" *id.* (citing Fed. R. Evid. 802); or might properly be categorized as nonhearsay, Fed. R. Evid. 801(d)(2)(A)–(E) (defining as nonhearsay an opposing party's statement made under various circumstances, including "by the party's coconspirator during and in furtherance of the conspiracy").

Second, even if there is not a hearsay issue, the evidence must be relevant, meaning "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

Even if relevant, rap music evidence must be analyzed to determine whether it is improper character or prior bad act evidence under Federal Rule of Evidence 404(b). "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show conformity therewith." Fed. R. Evid. 404(b). Such evidence may, however, be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ." *Id.* "This Circuit follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly . . . nor irrelevant . . . ." *U.S. v. Hopkins*,

2022 WL 1923033, at *1 (2d Cir. June 6, 2022) (quoting *U.S. v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011)).

And, even if the rap music video evidence satisfies Rules 401 and 404(b), under Rule 403, it should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Evidence is considered unduly prejudicial where "it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *U.S. v. Massino*, 546 F.3d 123, 133 (2d Cir. 2008) (citation and internal quotation marks omitted). Rule 403 is typically understood to counsel against admission of evidence that encourages the decisionmaker to make their decision on an improper basis. *Old Chief v. U.S.*, 519 U.S. 172, 180 (1997). "The availability of alternative testimony does not alone provide a basis for excluding evidence" but it may be properly considered as a factor when weighing the probative value of a piece of evidence against the risk of prejudice. *U.S. v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006).

In both the Rule 404(b) and 403 contexts, evidence is generally admissible where it does not involve "conduct more inflammatory than the charged crime." *See U.S. v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006); *U.S. v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999).

The issue of prejudice with respect to the admission of rap music evidence in criminal trials has been the subject of considerable discussion. Some courts have found the content of rap music to be cause for concern: "the fundamental nature of rap music as a form of artistic expression that frequently features aggressive and hyperbolic language would pose too great a risk of undue prejudice." *U.S. v. Wiley*, 610 F.Supp.3d 440, 445 (D. Conn. 2022); *U.S. v. Johnson*, 469 F. Supp. 3d 193, 222 (S.D.N.Y. 2019) (excluding as irrelevant and unduly prejudicial rap lyrics that appeared to have little probative value and that included references to

violence, allusions to police misconduct, and profanity); *U.S. v. Stephenson*, 550 F. Supp. 3d

1246, 1255 (M.D. Fla. 2021) (excluding videos due to the risk that the jury would render a

verdict based on the defendant's rap lyrics, which included racially insensitive words and violent

sexual imagery).

Even beyond the content of rap music, lyrics, and videos, stereotypes about the genre and

those who create rap music—typically young men of color—may influence how police, judges,

and jurors interpret rap lyrics.[5] "While lyrics from other genres are interpreted as satirical or

artistic, rap music is considered offensive and threatening."[6] Several studies have suggested that

people consistently deem the exact same set of lyrics to be more offensive, in greater need of

regulation, and more literal, when characterized as rap music, rather than country music.[7]

Another study explored the biasing effect of the introduction of rap lyrics authored by a

defendant on perceptions of the defendant's personality.[8] The study suggested that showing

participants the rap lyrics had a significant prejudicial impact on their evaluations of the

defendant.[9] The authors concluded that "the defendant was seen as more likely to have

committed a murder than had he not been presented as authoring such lyrics."[10] Moreover, the

results showed that the writing of rap lyrics was "more damning in terms of adjudged personality

characteristic" than being charged with murder.[11]

---

[5] Adam Dunbar, Charis E. Kubrin & Nicholas Scurich, *The Threatening Nature of "Rap" Music*, 22 PSYCH., PUB. POL'Y & L. 280, 281 (2016) (cited by *U.S. v. Wiley*, 610 F. Supp. 3d at 445; referenced by *U.S. v. Williams*, 2023 WL 4277461, at *5 (D. Ariz. Mar. 4, 2023).

[6] *Id.*

[7] *Id.*; *see also* Carrie Fried, *Who's afraid of rap? Differential reactions to music lyrics*, 29 J. APP. SOC. PSYCH. 705 (1999) (cited by *Williams*, 2023 WL 4277461, at *9).

[8] Stuart Fischoff, *Gangsta' Rap and a Murder in Bakersfield*, 29 J. APP. SOC. PSYCH. 795 (1999) (cited by *Williams*, 2023 WL 4277461, at *10).

[9] *Id.* at 803.

[10] *Id.* at 795.

[11] *Id.*

Finally, there is the challenge of determining to what extent rap music is autobiographical or based on real-life events. *See, e.g.*, *U.S. v. Williams*, No. CR-18-01695-004-TUC-JAS (EJM), 2023 WL 4277461, at *37 (D. Ariz. Mar. 23, 2023) ("Courts have . . . universally recognized that rap music features fictional imagery, metaphors, and exaggerated storylines," and it is "difficult to identify the probative value in fictional or other forms of self-expressive endeavors[.]"); *U.S. v. Bey*, No. 16-290, 2017 WL 1547006, at *6 (E.D. Pa. Apr. 28, 2017) ("Viewed in their broader artistic context, the rap music evidence does not have a high probative value. Rap lyrics are not necessarily autobiographical statements; rather, rap music is a well-recognized musical genre that often utilizes exaggeration, metaphor, and braggadocio for the purpose of artistic expression."). This calculus is further complicated by the fact that authenticity appears to be a central tenet of the rap music genre.[12] Thus, rap artists arguably face pressure to convince listeners that "their lyrics are truthful and accurate representations of their lives, beliefs, and conduct,"[13] even where their music in fact represents "fiction, imaginative constructions, or hip hop's traditional journey into myth."[14]

As a result, a significant risk of prejudice may accompany the introduction of rap lyrics and rap music video evidence. Indeed, the Second Circuit has noted that rap lyrics are only properly admitted "where they are relevant and their probative value is not substantially outweighed by the danger of unfair prejudice." *U.S. v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015). Some courts have tried to reconcile these considerations by holding that in order to be admissible under Rule 403, "rap lyrics and rap music videos [must] speak with specificity to the precise

---

[12] Andrea Dennis, *Poetic (In)justice: Rap Music Lyrics as Art, Life, and Criminal Evidence*, 31 COLUM. J.L. & ARTS 1, 19 (2007) (cited by *Bey*, 2017 WL 1547006, at *6 n.2).
[13] *Id.*
[14] IMANI PERRY, PROPHETS OF THE HOOD 87 (Duke University Press 2004).

conduct with which [the defendant] was charged." *U.S. v. Carpenter*, 2022 WL 16960577, at *3 (2d Cir. Nov. 16, 2022). Courts have applied this principle where the rap videos resembled aspects of the charged crime, established the defendant's association with a street gang and motive to participate in the charged conduct, and demonstrated a defendant's knowledge of the drug trade. *Herron*, 2014 WL 1871909, at *4; *U.S. v. Wilson*, 493 F. Supp. 2d 484, 488–89 (E.D.N.Y. 2006); *U.S. v. Pierce*, 785 F.3d 832, 841 (2d Cir. 2015); *U.S. v. Foster*, 939 F.2d 445, 456 (7th Cir. 1991).

Similarly, in cases in which the rap music evidence was less closely connected to the charged conduct, courts have been more reticent to admit it. *See, e.g.*, *U.S. v. Wiley*, 610 F. Supp. 3d 440, 446 (D. Conn. 2022) (The Court recognized that "not every lyric in a rap video is probative of the charged conduct" and therefore excluded "[l]yrics containing statements with only a tenuous connection to the charged conduct" while admitting "statements or images with offense-specific content tending to corroborate the Government's other evidence."); *U.S. v. Sneed*, 3:14 CR 00159, 2016 WL 4191683, at *5–6 (M.D. Tenn. Aug. 9, 2016); *U.S. v. Gamory*, 635 F.3d 480, 493 (11th Cir. 2011).

Finally, even beyond these evidentiary issues, a constitutional one has been raised: whether there are First Amendment implications of evidentiary uses of speech and expression. This constitutional issue, however, should not detain the Court for very long.[15] While the First Amendment protects freedom of speech and expression, U.S. Const. amend I, it generally "does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive

---

[15] The Court does not and need not reach the issue of whether the admission of rap lyrics or rap music video evidence could ever give rise to First Amendment claims. Rather, in the context presented here, the Court finds that such constitutional concerns are not relevant, especially in light of the extensive evidentiary issues at play. *Cf. Spector Motor Co. v. McLaughlin*, 323 U.S. 101, 103 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").

or intent." *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993). When determining whether the evidentiary use of speech or expression is appropriate in a given case, "[t]he crucial question is whether the evidence at issue was used for permissible purposes or merely to show that [the defendant] was morally reprehensible due to his abstract beliefs." *U.S. v. Fell*, 531 F.3d 197, 229 (2d Cir. 2008). "Where a defendant 'does not face prosecution for his speech,' there is no danger of violating that defendant's rights guaranteed by the First Amendment." *U.S. v. Wiley*, 610 F. Supp. 3d 440, 444 (D. Conn. 2022) (quoting *U.S. v. Herron*, No. 10-CR-0615 NGG, 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014), aff'd, 762 F. App'x 25 (2d Cir. 2019).

With that legal background, the Court turns to the specific evidence sought to be admitted in this case.

### i.   The Proposed Video Evidence

The Government seeks to introduce six YouTube videos, along with corresponding transcripts of the audio and lyrics contained in the music videos. Gov't Mot. Re: Rap Music at 1. The Government offers the music videos in order to establish "the existence, structure, purpose, methods, and means of the charged RICO conspiracy[.]" *Id.* at 2–3. The Government plans to use the rap music video evidence in at least three different ways: (1) as general evidence of the "modus operandi of the enterprise"; (2) as contextual evidence about the existence and nature of the relationships between the Defendants; and (3) as direct evidence of some of the charged conduct (*e.g.* murders, attempted murders, and distribution of narcotics). *Id.* at 14–25.

The Government argues that the rap music video evidence is admissible under Rule 403 because the relevance of videos is not outweighed by the risk of unfair prejudice. *Id.* at 26. Under *Livoti*, the Government argues that because the music videos' content is "certainly not more inflammatory than the charged crimes in this case[,]" it cannot be unduly prejudicial. *Id.* at 25–

26; 196 F.3d 326 (holding that evidence should not be excluded as unduly prejudicial when it is not "more inflammatory than the charged crime").

The Government also argues that "[t]he First Amendment offers no protection of the proposed rap music videos." Gov't Mot. Re: Rap Music at 27. The Government alleges that it is appropriate to admit evidence of Defendants' previous statements or declarations because the First Amendment does not prohibit the evidentiary use of speech to establish elements of a crime or to prove motive or intent, unless the Defendants are facing prosecution for the speech itself. *Id.*; *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993); *U.S. v. Herron*, No. 10-CR-615 (NGG), 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014). Although the evidence in question is in the form of music videos, the Government maintains that it is "more appropriately viewed as admissions to criminal conduct," which does not deserve additional protections. Gov't Mot. Re: Rap Music at 29.

The Defendants have submitted several filings on this topic. *See* Hayes Mot. Re: Rap Music; Hayes Mem. in Opp. to Gov't Mot. Re: Rap Music Video Evid., ECF No. 321 (Mar. 6, 2023); Donald Mem. in Opp. to Gov't Mot. Re: Rap Music Video Evid., ECF No. 334 (Mar. 20, 2023); Wright Mot. to Join Co-Def.'s Opp. to Gov't Mot. Re: Rap Music Video Evid., ECF No. 335 (Mar. 21, 2023); Jones Resp. to Gov't Mot. Re: Rap Video Evid., ECF No. 389 (Aug. 10, 2023).

Mr. Donald argues that the rap music video evidence should not be admitted against him because his image appears in less than one second of only one of the six videos the Government seeks to introduce. Donald Mem. in Opp. to Gov't Mot. Re: Rap Music Video Evid. at 3. Mr. Donald claims that he "did not participate in, intend, or even know about the creation of the images, music, and lyrics in the videos which the government proposes to offer against him at

trial." *Id.* at 6. As a result, he contends that the rap music video evidence is both not probative and highly prejudicial to him. *Id.* If the evidence were admitted, Mr. Donald argues that a limiting instruction would be insufficient to shield him from prejudice and states that he would renew his motion to sever. *Id.* at 6–7.

Other Defendants argue that this Court should preclude the Government from introducing any evidence pertaining to rap music lyrics or videos because such evidence is unduly prejudicial. Hayes Mot. Re: Rap Music at 1–2. The six rap music videos, they argue, are not probative, while being highly prejudicial, since the lyrics speak only to generalized conduct that is typical of the gangster rap genre. *Id.* at 2–3. Defendants point to case law from other districts to emphasize that rap music often references fictional imagery and exaggerated storylines; that its controversial nature risks exciting the emotions of jurors from different backgrounds; and that the admission of lyrics that seemingly glorify violence and criminal activity risks using First Amendment expression as improper character evidence. *Id.* at 3–4.

Mr. Jones further argues that the First Amendment precedent relied upon by the Government—*U.S. v. Herron*, 762 Fed. App'x 25, 30 (2d Cir. 2019)—is "rickety." Jones Resp. to Gov't Mot. Re: Rap Video Evid. at 2.  He urges this Court to discard *Herron* "in favor of a straightforward strict scrutiny standard that the Government cannot meet." *Id.*

ii.  Discussion of the Proposed Video Evidence

As a preliminary matter, the Government seeks to introduce six videos, which are highly stylized, and may have been both professionally filmed and edited. The form of these rap music videos thus raises a number of questions about the videos' probative value.

First, because they have been filmed and edited—perhaps, by third parties (each video was uploaded by one of three production companies or videographers: AKeylo Production, Jay

50

Young, and QuashaBlackProductions)—there is a chain of custody issue as to whether what is

purportedly said by the Defendants on these videos was actually said by these Defendants. *See*

Fed. R. Evid. 901 ("to satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is

what the proponent claims it is."); *McHale v. Crown Equipment Corp.*, No. 21-14005, 2022 WL

4350702 (11th Cir. Sept. 20, 2022) (finding that the trial court did not abuse its discretion in

excluding YouTube video evidence, where there was "no evidence of when the video was

originally recorded, what device made the recording, or any witness testimony to the accuracy of

the accident or whether the video had been altered" because "[a]ll we know is that the video was

pulled from YouTube"); *U.S. v. Vayner*, 769 F.3d 125, 132–33 (2d Cir. 2014) (holding that a

social media page should have been excluded under Rule 901 because "[t]he government did not

provide a sufficient basis on which to conclude that the proffered printout was what the

government claimed it to be—[the defendant's] profile page—and there was thus insufficient

evidence to authenticate the . . . page and to permit its consideration by the jury"); *U.S. v. Hunt*,

534 F. Supp. 3d 233, 254 (E.D.N.Y. 2021) ("Where, as here, social media content is offered for

the purpose of establishing that a person made particular statements—that is, the relevance of the

proffered evidence "hinges on the fact of authorship"—a certification by a custodian in itself

cannot be sufficient for purposes of authentication . . . .").[16] Indeed, each video is comprised of

numerous distinct images, which have been spliced together. Various segments of the videos

were filmed at different locations, including the Bridgeport train station, public sidewalks and

---

[16] Any such evidentiary foundation is distinct from a certification from YouTube as to what had been uploaded onto
its system. *See* Fed. R. Evid. 902(13) ("Data copied from an electronic device, storage medium, or file, if
authenticated by a process of digital identification, as shown by a certification of a qualified person that complies
with the certification requirements of Rule 902(11) or (12). The proponent also must meet the notice requirements of
Rule 902(11)."); *U.S. v. Hassan*, 742 F.3d 104, 132 (4th Cir. 2014) ("That the . . . YouTube videos were self-
authenticating business records was not, however, the end of the trial court's inquiry. The court also required the
government, pursuant to Rule 901, to prove that [the evidence was] linked to [the defendants].").

streets, and a store; the individual participants wear different outfits in the various clips; and the filming appears to have been taken at different times of the day.

In addition, the participants in these rap music videos appear to be lip syncing to a separately recorded audio track. The Government has identified the alleged speaker of various lyrics in the videos. But it has not indicated whether and how it plans to establish that the individuals who appear in the videos are the same individuals whose voices are heard on the audio track. *See* FRE 901(b)(5) (requiring "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker."); *U.S. v. Tropeano*, 252 F.3d 653, 651 (2d Cir. 2001) (holding that audio tapes were properly authenticated by witnesses who had firsthand knowledge of the Defendant's conversations and identified the voices on the audio tapes). While the Government has provided transcripts created by FBI Agent Haley Marquardt for each proffered video, there would need to be testimony as to how the precise lyrics were determined.

Moreover, because any statements on these rap music videos are out-of-court statements, the Government presumably seeks to have them admitted as non-hearsay statements as the statements of an opposing party or as statements of an opposing party's co-conspirator. *See* ECF No. 310 at 16 (citing Fed. R. Evid. Rule 801(d)(2)(A)–(E)). As a result, all of the participants in each video must be identified as members of the conspiracy, or the Government must explain why any hearsay statements by them should be considered for admission into evidence. *See U.S. v. Herron*, 2014 WL 1871909, at *5 ("If being offered for their truth, statements of unidentified speakers or individuals who are not alleged to be co-conspirators shall generally be excluded as hearsay unless the Government articulates a relevant exception under Rule 803."); *Diaz*, 176

F.3d at 83 (setting forth requirements for the admission of co-conspirator statements under Rule 801(d)(2)(E)).

As a result, before these rap videos could be considered for admission into evidence, these threshold issues as to their production and the corresponding chain of custody issues related to their production must be satisfied. *Hassan*, 742 F.3d at 133 (while "the burden to authenticate under Rule 901 is not high—only a prima facie showing is required," a "district court's role is to serve as gatekeeper in assessing whether the proponent has offered a satisfactory foundation from which the jury could reasonably find that the evidence is authentic" before admitting it) (quoting *U.S. v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009)).

Even if these threshold issues are addressed, other evidentiary issues remain, regarding their use as: (1) general evidence of the "modus operandi of the enterprise"; (2) contextual evidence about the existence and nature of the relationships between the defendants; and (3) direct evidence of some of the charged conduct (*e.g.* possession of weapons, distribution of narcotics).

At this point, based on the Court's review of the rap music videos, the related caselaw, and the proffered basis for their admission, the introduction of the six rap music videos as general evidence of "the brazen violence of the East End gang and its members," or their alleged pattern of promoting the gang, conveying disrespect to rivals, or instilling fear and engendering respect in the streets is not warranted under either Rule 404(b) or Rule 403.

The Government argues, for example, that the refrain "trappers and shooters" from "Heavyweight Champ x BookiEE 'ElitEE'" is evidence of "how gang members were expected to be either 'trappers,' those who sell narcotics, or 'shooters,' those who protect the gang's reputation and territory by shooting opposition gang members."  Gov't Mot. Re: Rap Music at

19. Similarly, the Government asserts that the lyric "we pull up on them blocks n—, empty out them Glocks n—," is evidence of "the modus operandi used by East End gang members in the charged conduct—namely, drive by shootings." *Id.* at 20. Without more context, these lyrics, however, do not "speak with [any] specificity to the precise conduct with which [Defendants are] charged." *U.S. v. Carpenter*, 2022 WL 16960577, at *3. While the lyrics are undoubtedly violent, they do not clearly connect to any of the specifically charged conduct. Having viewed them, the marginal probative effect of these videos to show the general "modus operandi" of the East End gang is minimal, especially since the Government also plans to offer other evidence (civilian and police testimony; cooperating defendant testimony; DNA and ballistics evidence; surveillance, body camera, and dash camera footage; etc.) regarding each alleged violent incident at trial. Similarly, evidence that Defendants generally had access to drugs and money is only marginally probative, especially since, as the Government conceded at the motions hearing, it does not have any evidence that any of the firearms depicted in any of the videos was connected to any of the charged conduct. *Cf. Carpenter*, 2022 WL 169660577 at *2 ("the video showed Carpenter posing with a gun, and the government argued, based on enhanced photography showing identifying marks, that this was the same gun as one that had been seized at the time of Carpenter's arrest.").

These rap music videos, which feature Defendants rapping about violence and generalized criminal behavior, carry a significant risk of being used by jurors as impermissible character of prior bad act evidence under Rule 404(b). *See Bey*, 2017 WL 1547006 at * 2 ("The task . . . is not merely to find a pigeonhole in which the proof might fit, but to actually demonstrate that the evidence proves something other than propensity.") (internal quotation marks and citations omitted). The use of rap music video evidence for this purpose also does not

pass Rule 403's related balancing test, whether as part of a Rule 404(b) analysis or separately under Rule 403 alone. *See id.* (noting that the evidence's probative value cannot be "outweighed by the inherently prejudicial nature of prior bad act evidence.") (internal quotation marks and citations omitted).

Accordingly, the Government's motion will be denied as it relates to the use of rap music video evidence to prove a general pattern of behavior or "modus operandi." This denial, however, is without prejudice to renewal, to the extent other evidence admitted at the trial lays a sufficient foundation, and provides a renewed basis for their admission, including but not limited to any lines of inquiry on cross-examination by any of the Defendants through counsel, or the testimony of any of the Defendants themselves.

Consistent with all of the caveats noted above, to the extent that the Government can lay a foundation that these rap music videos were used to convey messages to a rival gang and others in connection with the alleged conspiracy, rap music video evidence possibly may be introduced in a limited fashion, such as through testimony about the specific act of making the video for such purpose, as well as the alleged content of the statements of a speaker on the video, without the admission of the rap music video evidence themselves, if such proffered evidence is not cumulative. *See Herron*, 2014 WL 1871909 at *5 ("[T]he court may exclude as cumulative or redundant rap-related video evidence that goes to a fact that has been firmly established by the Government.").

Similarly, to the extent that the Government seeks to use the rap music video evidence as proof of the relationships between co-conspirators and co-defendants, this evidence may be cumulative. The Government has represented that it plans to offer cooperating defendant testimony, witness testimony, and other social media and communications evidence to illustrate

the nature of the relationships between co-defendants and co-conspirators. Given the potential availability of alternative evidence that carries a lesser risk of prejudice to Defendants, the Court is inclined to find that the risk of prejudice outweighs the probative value of the proffered rap video evidence in this context. *U.S. v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006) ("The availability of alternative testimony does not alone provide a basis for excluding evidence" but it may be properly considered as a factor when weighing the probative value of a piece of evidence against the risk of prejudice.).

Accordingly, the Government's motion is denied as it relates to the introduction of rap music video evidence to prove the nature of the relationships between co-conspirators and co-defendants. *See Herron*, 2014 WL 1871909 at *5 (noting that "cumulative or redundant rap-related video evidence that goes to a fact that has been firmly established by the Government" may be excluded.); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice . . . or needlessly presenting cumulative evidence.").

Again, this denial is without prejudice to renewal, to the extent other evidence admitted at the trial lays a sufficient foundation, and provides a renewed basis for their admission, including but not limited to any lines of inquiry on cross-examination by any of the Defendants through counsel, or the testimony of any of the Defendants themselves. To the extent that the Government is able to lay a proper foundation through witness testimony, and to the extent that such evidence is necessary to prove the relationship between co-defendants and co-conspirators, rap video evidence possibly may be introduced in a limited fashion (e.g. screenshots from certain videos depicting co-defendants or co-conspirators together).

Finally, the Court reserves judgment on the use of rap music video evidence to prove specific charged acts. In its motion, the Government alleges that the videos display "an unmistakable factual connection to the charged crimes[.]" Gov't Mot. Re: Rap Music at 17. Yet, the majority of the connections drawn between the rap lyrics and the charged acts seem tenuous at best. While the lyrics undoubtedly refer to violent acts, and also evidence some form of rivalry (through the repeated derogatory references to "ops"), as noted by Defendants at the motions hearing, these passages may not be specific enough to connect them to actual charged incidents.

The ultimate determination regarding the admission of these rap music videos, in whole or in part, will turn on the closeness of the nexus drawn between a given set of lyrics and the charged conduct, through witness testimony or other evidence at trial. *See Wiley*, 610 F. Supp. 3d at 445 (distinguishing between lyrics that have "only a tenuous connection to the charged conduct" and those with "offense-specific conduct tending to corroborate the Government's other evidence" is necessary because "only where the Government can point to lyrics that communicate specific details related to the charged conduct is the Court confident that evidence's probative value is not substantially outweighed by the risk of unfair prejudice").

Generally, though, the Court is unlikely to admit videos that generically reference the drug trade, the gang war in Bridgeport, generalized acts of retaliation or violence, or possession of firearms. The Court may admit lyrics[17]—without admitting the rap music videos themselves— that suggest specific knowledge of charged incidents or conduct, possession of vehicles or firearms that are tied to charged incidents, or the nature of relationships between co-conspirators or co-defendants. *See Herron*, 2014 WL 1871909 at *4 (noting that "[s]ome content in the rap-

---

[17] The Court is unlikely, however, to permit the introduction of an unauthenticated transcript of these lyrics as an exhibit. Rather, to the extent that witnesses are able to testify to particular lyrics, and their connection to the charged conduct, such testimony may be appropriate.

related videos is relevant to the charges the Government seeks to prove, and the decision of whether to credit that evidence rests with the jury.").

Thus far, however, the Government's purported connections appear to be significantly attenuated from the charged conduct.

For example, the Government argues that "Heavyweight Champ x BookiEE 'ElitEE'" describes the murder of Jerrell Gatewood. *Id.* at 19. The Government claims that the lyrics "I shot this n—" and "clapped this n— watched his brains explode" describe how Mr. Gatewood was shot from behind five months before the video was posted. *Id.* But while a witness allegedly will testify as to how Mr. Gatewood was killed, this alleged knowledge, without more, does not mean that these lyrics, which are quite general, relate to that specific murder. In the absence of a stronger factual connection or other foundation, this rap music video excerpt may not be probative of the charged conduct.

The Government also argues that the following line from "HEAVYWEIGHT X JU$ MONEY X USA (OFFICIAL VIDEO)" is about the alleged attempted murder of Joshua Gilbert: "rack city we be mobbing with the shooters, popping on your block, it's just me and all my shooters n— talk that gangsta sh— until we run right into them." The Government states that at trial, it will prove that "that is exactly what happened on October 17, 2019, when East End Gant members, including Travon Jones, conspired to kill O.N.E. member Joshua 'Lor Heavy' Gilbert, by driving up to his block in the Trumbull Gardens Housing Complex and shooting him from a car while Gilbert walked on the street." Gov't Mot. Re: Rap Music at 5–6.

But the phrase "popping on your block" and other such generic references do not include any specific details that match the alleged attempted murder of Joshua Gilbert—an attempted murder, the Court notes, that took place more than a year after the publication of this video to

YouTube. *Cf. Stephenson*, 550 F.Supp.3d at 1252 ("The remoteness of the first video, published eighteen months prior to the date of the offense, diminishes its probative value and the remoteness of the second video, published ten months before the offense, reduces its probative value. . . . Temporal remoteness is an important factor to be considered as it depreciates the probity of the extrinsic offense.") (citations omitted).

Similarly, regarding "HEAVYWEIGHT X EVIL END (OFFICIAL VIDEO)", the Government characterizes the following passage as both an admission and a confession: "ride around on this side of town, see a n— and it's goin down, try to ride through the hollow we chase you down, we give it up we don't play around, free my n— that don't play around, f— the ops, they some d— clowns." *Id.* at 7–8. The Government argues that this passage is linked to two murders of rival gang members, Eric Heard and Keith Jones, who were allegedly shot in the Hollow by East End gang members in October 2018, shortly before this video was posted on YouTube. *Id.* The Government also notes two other murders, allegedly committed by East End members, that took place in the Hollow in 2019 and 2020. *Id.* In the absence of more information, this generic description of riding through The Hollow, an entire neighborhood of Bridgeport, is not sufficiently specific to be probative of four murders that occurred over a two-year period. *Cf. Stephenson*, 550 F.Supp.3d at 1252 (discussing the problem with temporal remoteness from the rap music video and the alleged crime).

In "HEAVYWEIGHT X IM SO EVIL (IM SO BROOKLYN CHALLENGE)", the Government states that a witness will testify that the line, "Can't get you, hit your dad, just cause you his son," is a reference to Hayes's alleged retaliatory shooting of rival gang member Asante Gaines's father. *Id.* at 9. If the Government produces such witness testimony at trial, there might be a sufficient factual nexus here to warrant admission. But, to the extent that a witness can

testify about the connection between the alleged retaliatory shooting and the making of this particular video, it is unclear how much additional probative value the admission of this entire rap video adds.

Finally, the Government seeks to introduce "Budda PG – Unfinished Business" as evidence of the murder of Shawn Warren. *Id.* at 11. The relevant lyrics are: "it was me, John, Quzi, Reemy we run down. Boom, bang, pop, ducked out, it was like four different gunshots." *Id.* The Government states that a witness will testify that the song was about Mr. Warren's murder, *id.*, and at the motions hearing, it further argued that certain key facts (such as the number of gunshots and the individuals named in the song) matched details of the crime. At the conference, however, Defendants disputed some of these facts (the number of people present at the time of the murder, the location of the gunshot wound, the number of shots). Defendants instead claimed that the song merely describes generalized violence and is not probative of Mr. Warren's murder at all. While the details of what happened may go to the weight rather than the admissibility of this evidence, *see Herron*, 2014 WL 1871909 at *4 (noting that "the decision of whether to credit that evidence rests with the jury"), the Government has not adequately addressed the issue of prejudice as to the admission of that rap music video in its entirety or in part, as opposed to just permitting the admission of those specific lyrics without the accompanying video, provided that proper evidentiary foundation is laid.

Accordingly, under both Rule 404(b) and Rule 403, the Government's motion is denied for now, as it relates to the introduction of rap music video evidence to prove specific charged incidents. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice . . . or needlessly presenting cumulative evidence."); *see, e.g. Stephenson*, 550 F.Supp.3d at 1255 ("Having reviewed the lyrics and

depictions in the videos and having considered their relevance to the charged offenses, the Court finds that the risk that the jury will render a conviction based on the rap lyrics and depictions in the YouTube videos, rather than what the United States has proven is far greater than the probative value of this evidence in establishing Defendant's knowledge, possession, and intent. Therefore, the Court finds that exclusion is warranted.").

As stated above, this denial is without prejudice to renewal, to the extent other evidence admitted at the trial lays a foundation and provides a basis for the admission of specific excerpts from the videos, including but not limited to any lines of inquiry on cross-examination by any of the Defendants through counsel, or the testimony of any of the Defendants themselves.

The Court will deny the Government's [310] motion without prejudice to renewal. Mr. Hayes's and Mr. Jones's [298] and [389] motions will also be denied without prejudice to renewal. The Court finds that Mr. Donald's concerns are moot at this time, as no rap music videos have been allowed into evidence at this point. To the extent that such videos are introduced and Mr. Donald believes that they are inadmissible against him, he may make a motion at that time.

C.  Trial Procedures

The parties have submitted various motions regarding the procedures at the upcoming trial. Some of these issues were addressed during the motions hearing on October 4, 2023, *see* Minute Entry, ECF No. 469.

For the sake of clarity, the Court addresses each in turn.

*1. Opening Statements*

Opening statements function merely to "state what evidence will be presented," rather than as "an occasion for argument." *U.S. v. Dinitz*, 424 U.S. 600, 612 (1976) (Burger, C.J.,

concurring). There are no federal statutes or rules regarding opening statements, and existing case law regarding opening statements does not discuss the issue in constitutional terms. *U.S. v. Salovitz*, 701 F.2d 17, 20 (2d Cir. 1983). For these reasons, the Second Circuit has held that "the making and timing of opening statements can be left constitutionally to the informed discretion of the trial judge." *Id.*

The Government has moved for an order permitting each party to make an opening statement of up to thirty minutes. Gov't Mot. Re: Opening Statements, ECF No. 278 (Feb. 4, 2023). The Government argues that opening statements "are particularly important in a case like this one due to the complexity of the law involved, the number of witnesses, the time frame of the conspiracy and the number of discrete criminal acts." *Id.* at 1. Such statements, it argues, will serve as a roadmap that will help the jurors to organize information as they hear it, and ultimately, to better comprehend the evidence presented. *Id.* at 4.

Defendants have opposed the Government's motion for opening statements. *See* Wright Obj. to Gov't Mot. for Opening Statements, ECF No. 423 (Sept. 12, 2023);[18] Donald Obj. to Gov't Mot. for Opening Statements, ECF No. 424 (Sept. 13, 2023).[19] Defendants argue that the Government has no right to make an opening statement and note that the Government has not identified any cases in which a court allowed the Government to make opening statements over the objection of a defendant. Defendants urge this Court to deny the Government's request, and instead suggest that "the parties should confer on a brief, stipulated statement regarding this case that the Court can read to the jury before the government begins its presentation of its case." Wright Obj. to Gov't Mot. for Opening Statements at 1–2.

---

[18] Mr. Wright's motion notes that all Defendants join the objection to opening statements. Wright Obj. to Gov't Mot. for Opening Statements at 1.
[19] Mr. Donald's motion simply states that Mr. Donald joins Mr. Wright's objection to the government's motion for opening statements. Donald Obj. to Gov't Mot. for Opening Statements at 1.

At the motions hearing, the Court stated that it was not likely to allow opening statements, given the length of the upcoming trial. Instead, the Court directed the parties to confer and agree on a jointly stipulated statement regarding this case that the Court will read to the jury before the Government begins its presentation of its case.

Accordingly, the Government's [278] motion for opening statements is denied.

### 2. Jury Issues

"No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*." *Skilling v. U.S.*, 561 U.S. 358, 386 (2010) (citing *U.S. v. Wood*, 299 U.S. 123, 145–146 (1936)). Rather, "[t]he content and quality of the *voir dire* are generally committed to the sound discretion of the court[.]" *Stephan v. Marlin Firearms Co.*, 353 F.2d 819, 822 (2d Cir.1965), cert. denied, 384 U.S. 959 (1966). As the Supreme Court has explained, "Jury selection, we have repeatedly emphasized, is 'particularly within the province of the trial judge.'" *Skilling*, 461 U.S. at 386.

Mr. Donald has moved for the Court to issue an expanded juror questionnaire in advance of voir dire and for the Court to allow an expanded *voir dire* process, including questions, a video, and instructions on implicit bias. Donald Mot. Re: Juror Questionnaire; Donald Mot. Re: Voir Dire.

The Government responds that, although it did not oppose an expanded juror questionnaire initially, it does not believe one is necessary. Gov't Resp. to Donald Mots. Re: Jury Selection, ECF No. 450 at 2 (Sept. 19, 2023). Moreover, it notes that this Court previously indicated that it would not utilize an expanded juror questionnaire. *Id.* The Government opposes an expanded *voir dire* process for several reasons. First, it argues that the "Unconscious Bias" video shown to every jury panel in the District by the Clerk's Office is sufficient to address the issue of implicit bias. *Id.* at 3. Second, it argues that individual *voir dire* by the parties would

cause unnecessary delay and might confuse jurors. *Id.* Third, it argues that "Donald's proposed questions risk interjecting bias when none existed and alienating potential jurors from the jury process and the exercise of their Constitutional duties." *Id.* at 5. Finally, the Government argues that the standard *voir dire* procedures used in this District are sufficient to guard against improper bias and ensure a fair trial free of racial bias. *Id.*

The Court generally agrees.

As a preliminary matter, on March 3, 2023, the Court indicated that, "For the reasons previously discussed, the Court will not be sending out a juror questionnaire, but instead will be providing the expected length of trial in any jury summons." Order, ECF No. 318.

Accordingly, and because juror summons have, at this point, already been mailed out, the Court will deny Mr. Donald's [444] motion as moot.

As to the *voir dire* questions, as indicated during the motions hearing, the Court intends to use its standard juror selection process, which includes a video about unconscious bias and general questions regarding jurors' ability to remain impartial and unbiased while reviewing the evidence. In keeping with its standard practice, the Court will also permit Defendants to ask follow-up questions of potential jurors, to the extent necessary.

Accordingly, Mr. Donald's [445] motion is denied.

### 3. Recalling Certain Witnesses

The Government has moved for permission to recall certain witnesses, if necessary. Gov't Mot. to Recall Witnesses. In its motion and at the motions hearing, the Government represented that it intends to present all evidence in a chronological fashion. Because of the number of charged predicate acts or events, the Government states that it may be necessary to recall key witnesses—such as the case agent, representatives from the Office of the Chief

Medical Examiner, Bridgeport Police Department officers and detectives—to testify regarding more than one incident. *Id.* at 2–3.

Defendants have not filed any responses to the Government's motion and expressed no objections at the motions hearing.

At the motions hearing, the Court noted that it might be more efficient to have key witnesses testify once, even if about multiple events, given the length of trial and the likely need for summations to tie together the evidence anyway. At this time, however, the Court will not preclude the Government from recalling witnesses in a limited fashion, if necessary.

Accordingly, the Court will grant the Government's [282] motion.

### 4. Protective Order

On September 14, 2023, the Government filed a motion requesting that this Court enter a protective order delaying until jury selection the disclosure of the name, address, and other identifying information of three of the Government's non-law enforcement witnesses. Gov't Mot. for Protective Order at 1. The Government additionally sought permission to withhold the witnesses' prior statements or testimony until after their direct testimony. *Id.*

Mr. Jones objected to the Government's motion, arguing that the delayed disclosure of witnesses' identities and prior statements or testimony would prejudice Defendants by: (1) limiting their ability to effectively object to questions on direct- and cross-examination; (2) extending an already lengthy trial by requiring a delay or continuance after the direct examination of each witness to allow Defendants to adequately prepare for cross-examinations; and (3) adding to the already-substantial burden of preparing for the upcoming trial by requiring Defendants to prepare for unnamed witnesses.

At the motions hearing, this Court directed the parties to confer and attempt to agree on language for a modified protective order. On October 12, 2023, the Government submitted a modified motion for a protective order with the consent of all Defendants. Gov't Mot. for a Protective Order Re: Discovery, ECF No. 478. On October 13, 2023, the Court granted the motion and adopted the modified protective order as agreed to and signed by all parties. Order, ECF No. 479.

Accordingly, the Government's [434] motion will be denied as moot.

### 5. *Exclusion of Witnesses*

Federal Rule of Evidence 615 states that "[a]t a party's request, the court must order witnesses excluded so that they cannot hear other witnesses' testimony." The Rule, however, does not authorize exclusion of a party, a person whose presence a party shows to be essential to presenting the party's claim or defense, or a person authorized by statute to be present. Fed. R. Evid. 615(a)–(d).

The Government has moved to exempt several of its witnesses from exclusion, as described below.

#### i.   Case agent

The Second Circuit has held that district courts have "discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615(b), deeming the agent witness a 'representative' of the government." *U.S. v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992). "Since the chief investigating agent may be of significant help to the prosecution during the course of a trial, the trial court has discretion to make an exception to the general rule of sequestration of witnesses in his case. . . ." *U.S. v. Pellegrino*, 470 F.2d 1205, 1208 (2d Cir. 1972); *see also U.S. v. Lee*, 834 F.3d 145, 162

(2d Cir. 2016) ("[T]he district court has discretion to exempt the government's chief investigative agent from sequestration, and it is well settled that such an exemption is proper under Rule 615[b], deeming the agent–witness a representative of the government." (quoting *U.S. v. Rivera*, 971 F.2d 876, 889 (2d Cir. 1992) (internal citations omitted))).

The Government has moved to allow FBI Special Agent Pappas to be present throughout the trial. Gov't Mot. for Exemption from Exclusion of Witnesses. Agent Pappas is expected to testify regarding "evidence obtained through search warrants, including warrants to Facebook, telephone company providers for cell site information, and YouTube . . . [as well as] search warrants for telephones, the collection of DNA samples, and other investigative steps he took to solve the crimes charged here and to build the case against this racketeering enterprise." *Id.* at 5.

Defendants have not responded to the Government's motion and did not object during the motions hearing.

Accordingly, and as described during the hearing, the Court will grant the [467] motion as to Agent Pappas.

### ii.  Victim Witnesses

Federal Rule of Criminal Procedure 60(a)(2) states that: "The court must not exclude a victim from a public court proceeding involving the crime, unless the court determines by clear and convincing evidence that the victim's testimony would be materially altered if the victim heard other testimony at that proceeding." When determining whether to exclude a victim, "the court must make every effort to permit the fullest attendance possible by the victim and must consider reasonable alternatives to exclusion. The reasons for any exclusion must be clearly stated on the record." *Id.* Generally, "A mere possibility that a victim-witness may alter his or her testimony as a result of hearing others testify is therefore insufficient to justify excluding him

or her from trial." *U.S. v. Pirk*, 284 F. Supp. 3d 445, 448–49 (W.D.N.Y. 2018) (quoting *In re Mikhel*, 453 F.3d 1137, 1139 (9th Cir. 2006).

The Government has moved to allow victims and their family members—who are expected to testify at trial "to establish[] background regarding the whereabouts of some of the victims at the time of their murders, the motivation for the murders and other critical facts regarding timing of the homicide and events that occurred after the death"—to attend the entire trial.

Defendants have not filed any responses to the Government's motion and did not raise any objections at the motions hearing.

Accordingly, in the absence of any clearly identified reasons for exclusion, *see* Federal Rule of Criminal Procedure 60(a)(2), the Court grants the Government's [467] motion as to the victim witnesses. To the extent that any issues arise during trial that would require exclusion of any of the victim witnesses, Defendants may raise them at that time.

### III.    CONCLUSION

For the foregoing reasons, the [298], [299], [301], [302], [303], [307], [310], [311], [389], and [442] motions are **DENIED without prejudice** to renewal at trial.

The [304], [305], [386], [434], and [444] motions are **DENIED as moot**.

The [278], [297], [300], [309], [361], [385], [426], [445], [453], and [457] motions are **DENIED**.

The [282], [295], [387], [388], and [467] motions are **GRANTED**.

**SO ORDERED** at New Haven, Connecticut, this 20th day of October, 2023.

_____/s/ Victor A. Bolden_____
Victor A. Bolden
United States District Judge